JEROME B. WYGANT, APPELLEE, v. JOHN H. DAHL, APPELLANT.

[FILED MAY 31, 1889.]

1. Action quia timet: TAXES. In an action *quia timet*, for the purpose of removing the cloud cast by a tax title, from real property, and to quiet the title in him, it appeared that the plaintiff and those under whom he claimed, had been in the exclusive uninterrupted possession of said land for more than ten years, and that said taxes had accrued and said tax deed been executed more than ten years before the bringing of the action. *Held*, That as the plaintiff sought equitable relief from said taxation and tax deeds, notwithstanding the statute of limitations, he must, as a condition of relief, do equity by paying such taxes and interest.

2. ———: ———: ATTORNEY'S FEE. In such action where a decree is rendered upon an answer or cross-petition of a defendant for such taxes, interest, and disbursements, or either of them, an attorney's fee equal to ten per cent thereon will be awarded.

3. Real Estate: TITLE: MERGER. Where the general owner of real property receives a deed therefor from a person holding a tax title to said property, the title conveyed by such deed will become merged in the title of such general owner.

APPEAL from the district court for Otoe county. Heard below before CHAPMAN, J.

C. W. Seymour, for appellant, cited: Dillon v. Merriam, 22 Neb. 151; Comp. Stat. 1885, p. 580; State v. S. C. & P. R. R., 7 Neb. 376; Cheney v. Harding, 21 Id. 68;

*Holmes v. Andrews*, 16 Id. 298; *Sullivan v. Merriam*, Id. 157; *Shelly v. Towle*, Id. 194.

*E. F. Warren*, for appellees.

COBB, J.

This case is brought to this court on appeal from the judgment of the district court of Otoe county.

On May 5, 1888, the plaintiff commenced his action alleging that he was then, and for seventeen years past, with those under whom he claimed title, had been, in the peaceable possession of certain real estate in said county, lot number ten, in block number eight, in Nebraska City proper; that his possession had been open, notorious, hostile, and adverse, to all the world, and especially to the claim and title of the defendant, who for seventeen years had exercised no acts of ownership and had not been in possession of any ·part of said lot; that the plaintiff claims title in fee simple to the same, and that the defendant claims an estate or an interest, adverse to the plaintiff, which is unfounded in law, and is a cloud upon the plaintiff's title, and is derived from deeds executed to the defendant, or his grantors, and recorded in the office of the clerk of said county; that the claim of the defendant is without any right whatever. It is therefore prayed that he be required to set forth the nature of his claim, that all adverse claims to that of the plaintiff be determined, and the cloud upon his title removed, etc.

The answer of the defendant, in the form of a cross-bill, alleges, and sets up, that he is the owner in fee simple of the lot described, and claims title thereto adverse to the plaintiff; that he derives his title from the facts that said lot was subject to taxation for the years 1860, 1862, 1863, and 1864, and was legally assessed for taxation for said· years; that the tax for the same was legally levied theron and was not paid by the plaintiff, but became and remained

delinquent until the sale of said lot for the payment of the
delinquent taxes thereon ; that said lot was legally adver-
tised for sale for the payment of such delinquent taxes, and
was duly offered for sale, and due return was made thereof
to the county clerk of said county by the treasurer of said
county within the time prescribed by law; that said lot
was sold at private sale at the said county treasurer's office
for said delinquent taxes to John H. Ahrends, August 17,
1866, who received a certificate of sale, and paid the sum
of $19.44 thereon, and who, on August 18, 1868, for a
valuable consideration sold, assigned, and delivered, said
certificate to Jacob Shoff. Shoff produced the certificate
to the treasurer of the county and received a tax deed for
said lot legally attested and acknowledged, and duly filed
for record at five o'clock P. M., August 20, 1868, and re-
corded at the clerk's office of said county, in book " P " of
deeds, on pages 495–496.    The defendant also alleged that
on October 14, 1869, Shoff sold and assigned his title and
interest to and in said lot to S. H. Morrison, by a good and
sufficient deed therefor; that afterwards, on May 10, 1870,
Morrison for a valuable consideration sold and assigned his
title and interest in said lot to defendant by a good and suf-
ficient deed therefor.    The defendant further alleged that
he paid the delinquent taxes on said lot, due for state, city,
and county purposes, for the years 1865, 1866, 1867, 1868,
1869, 1870, 1871, 1872, and 1873, as follows:

| | |
|---|---:|
| January 6, 1869, sidewalk tax | $31 50 |
| December —, 1867, for 1861, 1862, 1864, 1865, and 1866 | 24 30 |
| August 10, 1868, for 1867 | 12 60 |
| December 1, 1868, for 1868 | 13 75 |
| May 31, 1870, for 1869 | 31 20 |
| April 14, 1871, for 1870 | 50 00 |
| February 27, 1872, for sidewalk tax | 14 50 |
| March 28, 1872, for 1871 | 30 00 |
| August 4, 1873, for 1872 | 45 00 |
| August 7, 1874, for 1873, on the undivided half of said lot | 20 70 |
| Total amount of city taxes paid by defendant on said lot | $273 55 |

And county and state taxes as follows:

| | |
|---|---|
| November 14, 1867, for the year 1866. | $8 58 |
| November 14, 1867, for the year 1867 | 9 67 |
| December 1, 1868, for the year 1868 | 14 40 |
| May 20, 1870, for the year 1869, on the undivided half | 10 80 |
| April 14, 1871, for the year 1869, on the undivided half | 11 95 |
| April 14, 1871, for the year 1870 | 16 58 |
| March 29, 1872, for the year 1871 | 15 76 |
| August 4, 1873, for the year 1872 | ·34 82 |
| August 7, 1874, for the year 1873, on the undivided half | 22 91 |

Total of county and state taxes on said lot for which
receipt was taken............................................. $145 47

The defendant alleged that said lot was subject to taxation, was legally assessed for taxes, which were not paid by the plaintiff, but became delinquent for the years 1861, 1862, 1864, 1865, and 1866, and were unpaid after delinquency until the date of sale of the same for taxes, and that the same was legally advertised for sale on that account, at the time and in the manner required by law, and was offered for sale for the taxes for said years; that due return was made thereof to the city clerk of Nebraska City by the treasurer of said city of said lot sold by him at public sale within the time required by law; that the said lot was sold at private sale at the city treasurer's office for said taxes, to Jacob Shoff, December 13, 1867, who received a certificate therefor, and paid the sum of $24.30 thereon for the years 1861, 1862, 1864, 1865, 1866; that on July 20, 1870, the defendant as assignee of Shoff, surrendered to the city treasurer said certificate and received a tax deed in due form of law therefor, which deed was duly attested and acknowledged, and on the 11th day of August, 1870, was filed for record, at five o'clock P. M., and was duly recorded in the county clerk's office, in book "V" of deeds, pages 128, 129.

The defendant alleged that on July 10, 1870, Jacob. Shoff, for a valuable consideration, sold and assigned all his right, title, and interest, in said lot, to defendant, and

made a good and sufficient deed therefor, and avers that he is now the legal owner of the title and interest conveyed in the tax deed aforesaid.

The defendant further alleged, as an additional cause of defense, that more than three years had elapsed from the recording of the tax deeds for said lot, made to him, by reason of which he had acquired a complete and perfect title under said deeds and was entitled to a decree and judgment of the court for the possession thereof; and in the alternative that if he is found not to be the owner by a good and perfect title to said lot, and. entitled to the possession thereof, that then he is yet entitled to a perpetual lien upon the same, for the taxes aforesaid, for each of said years, with interest on each of said sums at the rate of forty per cent per annum, for two years from each of the several dates at which the same were paid, at the rate of twelve per cent per annum to the finding of the court of the amount due, and the allowance of an attorney's fee of ten per cent of the amount, and also to the decree of the court enforcing his lien upon the lot, and an order of sale, in default of payment, to satisfy the same.

The plaintiff's reply to the defendant's answer and crossbill alleges:

"1. That from August 17, 1866, the date of the sale of the lot to Ahrends, the defendant's grantor, to the commencement of this action, and to the present, the defendant has not, nor has any one through or under whom he claims title to said lot, been in possession of the same or any part thereof, but that the plaintiff and those through and under whom he claims, have been in the continuous and undisturbed possession of the whole of said lot, exclusive of any claim of the defendant therein; therefore it is immaterial whether or not the tax proceedings whereby defendant derives a title were regular and legal, as the title, lien, and claim, of the defendant, are barred by the statute of limitations of this state.

"2. The plaintiff further alleges in 1875 said lot was delinquent for taxes before assessed; that on September 10, 1875, the lot was duly sold for such delinquent taxes to L. F. D'Gette for the taxes of said year; that on the 12th of September, 1877, E. E. Lyle was the owner of the certificate of such sale, and having presented the same to the county treasurer, received the treasurer's tax deed therefor in due form, conveying the lot to him, who became seised in fee simple of the same and was the owner thereof; that said deed was recorded in the clerk's office of said county on September 17, 1877, in book No. 4 of deeds, p. 461; that on September 24, 1887, said E. E. Lyle, and Hattie A., his wife, conveyed the lot to Martha W. Warren, by deed duly recorded in the clerk's office of said county; that said Martha W. Warren took possession of the lot and occupied the same adversely to any claim of the defendant, until she conveyed the same to the plaintiff; that on February 8, 1888, she sold and conveyed the same to the plaintiff by warranty deed duly recorded in the clerk's office of said county, in book 10, p. 522; that the plaintiff has been hitherto in the peaceable possession and occupancy of said lot, adverse to the claim of the defendant. The plaintiff therefore insists that it is immaterial whether the defendant, or those under whom he claims, obtained a good and perfect title to said lot by reason of said tax proceedings set out in defendant's answer, or otherwise, because all right, title, interest, estate, lien or claim, that might accrue by reason of said proceedings, deeds, and conveyances, are barred by the statute of limitations of this state, and did not accrue within ten years next before the commencement of the action."

The defendant's motion to strike out the second paragraph of plaintiff's reply for the reason that it sets up new matter as an additional cause of action, was overruled by the court.

There was a trial to the court, with findings and decree for the plaintiff, which is now appealed to this court.

The action is predicated upon the statute of limitations, upon which the plaintiff founds his claim of title to the lot in question, or, specifically, upon ten years' adverse possession. It is true that the plaintiff sets out a deed from one Rankin to the undivided half of said lot to Messrs. Warren and D'Gette, with *mesne* conveyances to the plaintiff. But this evidence, I presume, is only intended to fix the extent of plaintiff's adverse possession. Whether the evidence of possession is, or is not, sufficient to establish plaintiff's title, does not seem to be a controlling question in the case, and will not be discussed. The plaintiff's brief is chiefly directed to the points raised by defendant's cross-bill, and it is to that our attention will be directed. The defendant offered in evidence a deed executed by D. F. Jackson, treasurer of Nebraska City, to the defendant, as assignee of Jacob Shoff, reciting that on July 20, 1870, the defendant produced to the treasurer a certificate of purchase dated December 13, 1867, signed by J. Dan Lauer, then collector of taxes of said city, by which it appears that Jacob Shoff, on December 13, 1867, did purchase at private sale in said city, the lot in question, which was sold to him for $24.30, that being the amount due, returned delinquent for non-payment of taxes, costs and charges for the years 1861, 1862, 1864, 1865, and 1866, (describing the lot,) the same having been offered at public auction, for taxes, and not sold for want of bidders; and there being no personal property found in the city out of which the taxes due on the lot could be made, it was sold at private sale, as the law requires. And it appearing that the defendant is the legal owner of the certificate of purchase, and that the time fixed by law for redeeming the lot therein described has expired and the same is not redeemed, as provided by law, and the defendant having demanded a deed for the lot, the same is set forth, which was duly acknowledged and recorded August 11, 1870.

The defendant also offered a deed from the treasurer of

Otoe county to John Shoff, for the lot in question, recit-
ing that Shoff on August 16, 1868, produced to the treas-
urer of said county the treasurer's certificate dated August
17, 1866, from which it appears that John Henry Ahrends,
on said last date, purchased at private sale in said county the
lot in question, sold to him for $19.44, the amount due and
returned delinquent, for the non-payment of taxes, costs, and
charges, for the years, 1860, 1862, 1863, and 1864, and it
appearing that Jacob Shoff is the legal owner of said cer-
tificate, and that the time fixed by law for redeeming the
lot therein described has expired, and the same is not re-
deemed, as provided by law, and the said Shoff having de-
manded a deed for the lot, and which was the least quantity
that would sell for the amount due thereon for taxes, costs,
and charges, and it appearing that the lot was legally liable
for taxation, had been assessed and charged on the tax
duplicate for 1860, 1862, 1863, and 1864, and had been
legally advertised for sale for taxes on August 17, 1866,
followed by the granting clause to Jacob Shoff.

The plaintiff offered in evidence the deed, for the lot in
question, of Jacob Shoff to Samuel H. Morrison, executed
August 14, 1869, and duly recorded on the same date; fol-
lowed by a deed from Morrison to the plaintiff, for the lot,
executed May 10, 1870, and duly recorded on the same
date.

The defendant also offered in evidence tax receipts for city
and county taxes paid by him upon the lot and upon part
of it, for the years 1866, 1867, 1868, 1869, 1870, 1871,
1872, 1873, and 1874.

It is conceded that the defendant has never been in pos-
session of the lot. The plaintiff resists his claim to a lien
for the taxes paid by him and his grantors on the ground
that such claim is barred by the statute of limitations; and
thereon arises the principal question in this case. The
plaintiff in his brief says: "The only question for the court
to decide is, Whether the claim of title under a tax deed

will become barred? If so, the judgment herein must be affirmed. No question precisely similar has been brought before the court." And the plaintiff further says: "It is *conceded* that if he had sought the aid of the court to declare the defendant's tax deed void because of irregularities either in the proceedings leading up to the tax sale, or because of defects in the deed itself, that as a condition of relief he would be compelled to pay to the tax purchasers the amount of taxes paid, with interest;   *   *   *   but in this case he says that the defendant has slept so long upon whatever rights he may have had that they are barred by the statute of limitations. We admit that the defendant's tax deeds were good, the best ever issued by a treasurer, and that for ten years thereafter he could have enforced his right to the possession; but having delayed beyond the statutory period, twice over, he cannot recover either the possession, or any other benefit from his tax deeds."

The question thus fairly presented was considered by the court, in the consultation room, with great care, and we all came to the conclusion that the plaintiff having sought relief in equity, must, as a condition thereto, discharge the equitable and legal duty of paying the taxes which appear to have been, and are conceded to be, legally assessed upon the property, and paid by the defendant and his grantors.

It may be assumed that the plaintiff, if he is in actual possession of the lot, may remain in possession despite the defendant; or if he is not in possession, he could enter thereon, occupying the same, and the defendant would be unable to oust him; but he is not content with such tenor of possession, in the condition which his acts, and the operation of the law, and the lawful acts of the defendant and his grantors, have left him. He comes into a court of equity asking relief from consequences fairly traceable to his own failure to discharge a common duty which the state requires of all lot owners, as well as the holders of all other species of property.

It is conceded there is considerable force in the plaintiff's claim that the statute of limitations has cleared this lot of all claim for taxes, and, it may be conceded, so far as the *legal* rights of the plaintiff are concerned. But it cannot be admitted that the lapse of time merely, or the undisturbed operation of a statute, can take the place of that measure of justice and equity which is due from every one who invokes the aid of a court of equity in a case where money has been expended to his advantage by his opponent.

As seen in the statement, the plaintiff concedes that had the defendant's title under his tax deed failed by reason of informality or illegality in any of the proceedings which led up from assessment to sale, or in the sale and conveyance, that the defendant would be entitled to a lien on the lot for the money paid for the tax title, and for taxes paid on the lot. But it is claimed that having failed in a matter of time in enforcing the lien, it ceases absolutely, not only in law, but in conscience and equity. We are not able to concur in this view.

On February 13, 1857, the territorial legislature of Nebraska passed an act, approved, adopting the revenue laws and system of the state of Iowa. Section 42 of chapter 37 of the Iowa code then in force, provided that "Taxes upon real property are hereby made a perpetual lien thereupon against all persons except the United States and this state."

On September 21, 1858, the territory of Nebraska adopted a criminal, civil, and general code, part III of which was entitled General Laws, and section 39 of which part contained a provision identical with that of the Iowa code quoted, substituting "territory" for "state," as in the original. This provision was reënacted and constituted section 54 of part I of the General Laws of the territory of 1864, and is retained in section 54, chapter 46, of the revision of 1866, and was reënacted and made section 51 of the revenue laws of this state, approved February 15, 1873, substituting

in the text "state" for "territory." The revenue law now in force contains a similar provision, section 138 of article I, chapter 77, Compiled Statutes, being as follows: "The taxes assessed on real property shall be a lien thereon from and including the first day of April in the year in which they are levied, until the same be paid."

It will thus be seen that whatever may be the remedy for the collection of delinquent taxes, either on the part of the public or of individuals who may have been subrogated to the rights of the public therein, the liability of all private property for taxes, and the tax lien thereon, has been constantly preserved, constantly recognized and reiterated by the legislature on every proper occasion; and this right and lien is recognized as unaffected by the lapse of time, if it is within the sense of language to accomplish it.

Without reviewing the decisions of this court to a great extent, as the time at my command will not admit of it, it will be sufficient to say that the duty of paying the taxes lawfully assessed upon land, which is the subject-matter of the relief sought in this instance, has been uniformly declared to be one that the party seeking relief must discharge as a condition precedent to obtaining it. I refer to the decision in *Dillon v. Merriam*, 22 Neb. 151, cited by counsel for the appellant. In this opinion MAXWELL, Ch. J., held that, "When a party comes into a court of equity asking relief, as a condition, the court will require him to do equity before it will be granted. This principle lies at the foundation of equity jurisprudence. (*Linden v. Hepburn*, 3 Sandf. 671.) This rule is frequently applied where a party brings an action to cancel a usurious mortgage upon land. In every such case where the borrower brings the action, the court will require him to pay the sum actually borrowed, with lawful interest, before relief will be granted. (*Post v. Bank of Utica*, 7 Hill, 391; *Rogers v. Rathbun*, 1 J. Ch. 367; *Tupper v. Powell*, Id. 439; *Fanning v. Dunham*, 5 Id. 142; *Livingston v. Harris*, 3 Paige, 533; S. C. 11

Wendell, 329; *Vilas v. Jones*, 1 Comst. 278; *Legoux v. Wante*, 3 Har. & John. 184.) This rule will be applied in the cancellation of tax deeds, and where the tax was a proper charge against the land, the land owner, as a condition of cancelling the tax deed, will be required to pay the tax with lawful interest thereon."

I quote from the case at length for the purpose of showing that in this case, as in many others, the obligation of paying taxes, without regard to length of delinquency, has been classed with that of paying interest and of discharging other just and equitable duties as a condition of obtaining relief in a court of equity. Time will not permit the review of the Iowa cases cited by counsel for the appellee. It is probable that it being the policy of that state to sustain tax titles, its courts have not usually gone so far in sustaining the lien as the courts of this state have. But I will call attention to the case of *Tabler v. Callanan*, 49 Iowa, 362, which seems strictly analogous to the case at bar. The court in the opinion say: "The plaintiff holds the patent, the defendant the tax title. The plaintiff asks that his title be quieted against that of the defendant. It is shown that the plaintiff is in possession, holding the land adversely to the defendant's title, which cannot be enforced for the reason that the remedy is barred by the statute of limitations. Plaintiff shows that he is entitled to hold the land. The action is to settle the rights of the parties to the land in controversy. The decree, therefore, correctly declared plaintiff's right to be paramount, and quieted his title against the adverse claim of the defendant.

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*

"The defendant insists that he is entitled to recover the sums paid by him in the purchase at the tax sale, and for subsequent taxes, with penalties and interest, under the doctrine that plaintiff cannot have equity until he does equity. There is force in defendant's claim; but the trouble with it is that it was not made in the pleadings, nor in any

other manner, in the court below.  It does not appear that
defendant raised any question in the court below involving
his rights to recover the money paid by him.  While his
right to recover in a proper case cannot be doubted, it can-
not, in the absence of pleadings presenting it, be first urged
in this court.  He may enforce this right in another action."

To this citation I will merely add that had the defend-
ant in the cause at bar, not in the pleadings, nor in any
other manner, in the court below, set up the fact of his
having bought the lot in question at delinquent tax sale
and paid taxes thereon, nor prayed the relief of the equit-
able power of the court to recognize his lien therefor, and
grant him relief in equity, it is more than probable that
the judgment of the court in this case would have fol-
lowed that of the supreme court of Iowa, cited.

The counsel for the appellee raises the additional point,
"That admitting the defendant's tax deeds were good, the
subsequent tax deeds issued thereon, and under which
plaintiff claims, vested in the plaintiff the absolute title,"
etc.  It appears from the record that the appellee on the
trial in the court below produced in evidence a tax deed to
E. E. Lyle upon the lot in question executed by John H.
Overton, treasurer of Otoe county, dated September 12,
1877, upon a tax sale made September 10, 1875, by R. H.
Miller, then treasurer of said county, to L. F. D'Gette, for
the delinquent taxes of 1875.  Also a deed from E. E.
Lyle to Martha W. Warren, of said lot, dated September
24, 1887.  Upon the introduction of these deeds, counsel
announced the object to be to show an independent chain
of title from the farthest interest in the plaintiff, and as
color of title to sustain the adverse possession.  If it were
the object of the evidence to establish an independent chain
of title in the plaintiff and thus tunnel around the de-
fendant's tax title—in other words, to show a title in the
plaintiff derived from a tax title from a sale for taxes which
became delinquent subsequent to the date of defendant's

tax deed, thus holding the lot divested of all previous tax liens — then it would be open to objection that by the appellee's own showing, he, or those under whom he claims, was in possession of the lot and claiming to own it at the time of the becoming delinquent of the taxes of 1875, under which that title was derived; and he had already shown a title in the lot, or a part of it, superior to a tax title. Mrs. Warren, under whom plaintiff claims, was possessed of such superior title at the time she received the conveyance from Lyle; so, upon the receipt of such conveyance by her, this deed, instead of building up a new and independent title in her, merged in her better title which she was then possessed of. In other words, she holding what we will assume to be a general title to the lot, or an undivided half of it, the law held it to be her duty to pay the taxes on it, and the law construes that which she did do, into doing that identical thing, to wit, paying the taxes on the lot. As authority on this point, I refer to the case of the *Trustees of the African Methodist Episcopal Church v. Hewitt*, 14 Pacific Rep. 540, cited by appellant: "Where one was in possession and claimed to own real estate under a void tax deed, but later procured a quitclaim deed from the rightful owner of said real estate, the interest he had in the land by virtue of such tax deed was merged in the stronger and superior title he obtained by such quitclaim deed. He then holds such real estate subject to all tax liens that would have been valid if the rightful owner had never parted with his title."

The decree of the district court is therefore reversed, and a decree will be entered in this court in accordance with this opinion, for which purpose a reference is made to H. H. Wheeler, the deputy clerk of this court, to compute and report the amount of taxes, interest, costs, and attorneys' fees, to which the defendant is entitled.

DECREE ACCORDINGLY.

REESE, CH. J., concurs.

MAXWELL, J.

I concur in the holding that he who seeks equity must do equity, and that where a land owner asks to remove a cloud from the title to his land, such as a tax lien or other incumbrance, justice requires that he shall remove such cloud by rendering to the holder thereof what is due thereon. This rule, unless changed by statute, has been constantly applied in cases where it was sought to relieve the complainant from a usurious contract, in which the effect of usury was to forfeit the entire debt and interest. Yet the courts uniformly hold that as a condition of relief the complainant must tender the amount actually loaned, with legal interest thereon. If such tender was made by the complainant, the court would relieve from the excess, but without such offer it would grant no relief, nor would it compel a discovery which would lead to the establishment of usury in the contract — in other words, lead to forfeiture. The leading case in this country appears to be *Rogers v. Rathbun*, 1 Johns. Ch. 367, where it is said: " It is a settled principle that he who seeks equity must do equity, and if the borrower comes into this court for relief against his usurious contract, he must do what is right as between the parties, by bringing into court the money actually advanced, with the legal interest, and then the court will lend him its aid as against the usurious excess. To compel a discovery without such offer would be against the fundamental doctrine of this court, which will not force a discovery that is to lead to a forfeiture. (*Bosanquet v. Dashwood*, Cases Temp. Talbot, 38 ; *Fritzroy v. Gwillim*, 1 Term. Rep. 153 ; Viner, Tit. Usury, 315 ; *Chauncey v. Tahourden*, 2 Atk. 393 ; *Earl of Suffolk v. Green*, 1 Atk. 450.)" See also *Tupper v. Powell*. 1 Johns. Ch. 439 ; *Morgan v. Schermerhorn*, 1 Paige Ch. 543.

In *Eiseman v. Gallagher*, 24 Neb. 79, this court held that where the borrower goes into a court of equity for

relief from a usurious contract, he must tender the amount of the principal and lawful interest thereon. It is true that in this state the lender may recover the amount actually loaned even where usury is proved, the forfeiture applying only to the interest and costs; but the principle is the same in both cases, and they differ only as to the extent of the forfeiture. If, therefore, a plaintiff who has been in the exclusive uninterrupted possession of land for more than ten years, and has thereby acquired a good title as against all the world, still deems certain taxes and tax deeds a cloud upon his title to said land, and seeks to remove the same, the equity rule applies, and as a matter of justice he will be required to pay what is equitably due thereon. In such case the tax purchaser has paid the taxes due on the land for one or more years, and thereby relieved it from that burden and thus has an equitable claim aside from his tax lien thereon; and although he may have slept upon his rights so long that he cannot enforce them against the land, yet where the land-owner seeks to have evidence of the tax purchase set aside in order that his title upon the records of the county may be clear and freed from suspicion of possible litigation, and thus become more merchantable and of greater value, the court will require him to do justice by paying what is due as a condition of its interposition. (*Dillon v. Merriam*, 22 Neb. 151.) The judgment, therefore, that the plaintiff pay the lawful taxes and interest thereon, together with lawful expenses, is right.

I do not concur in the part of the opinion, however, which holds in effect that the statute of limitations does not apply to tax liens. It is true that the statute declares that taxes shall be a perpetual lien upon real estate. By this, however, it is not declared, nor is it to be inferred, that the lien of the tax purchaser is perpetual, nor even that the remedy in favor of the state to enforce the lien may not be lost.

Section 179 of the act "to provide a system of revenue,"

37

approved March 31, 1879, (sec. 179, art. 1, chap. 77, Compiled Statutes,) provides: "The owner of any certificate or certificates of tax sale upon any tract of land or town lot shall be deemed to be the assignee and owner of all the liens for taxes of the state, county, city, village, township, district, and other municipal subdivisions, for which such tract or lot was sold, and may, instead of demanding a deed therefor, as provided in this act, proceed by action at any time before the expiration of five years from the date of such certificate, to foreclose the same, and cause the tract or lot to be sold for the satisfaction thereof, and of all prior and subsequent taxes paid thereon, in all respects, as far as practicable, in the same manner and with like effect as though the same were a mortgage executed to the owner of such certificate or certificates for the amount named therein, together with such subsequent and prior taxes paid thereon by the person having or owning the title to said land or lot adverse thereto. More than one certificate on the same property may be included in the same action, but each, together with prior and subsequent taxes paid thereon, shall be deemed and stated as a separate cause of action: *Provided*, That no action to foreclose any such lien shall be maintained unless the owner of any such certificate shall have served notice on the owner or occupant of the land mentioned therein, within the time and in the same manner as provided in section 123."

Section 180 provides: "If the owner of any such certificate shall fail or neglect either to demand a deed thereon, or to commence an action for the foreclosure of the same, as provided in the preceding sections, within five years from the date thereof, the same shall cease to be valid or of any force whatever, either as against the person holding or owning the title adverse thereto, and all other persons, and as against the state, county, and all other municipal subdivisions thereof."

The question here presented was before the court in

*Helphrey v. Redick,* 21 Neb. 83, and it was held that on the facts stated in that case the action was not barred. It is evident, however, that if the action in that case had not been brought within five years after the cause had accrued, it would have been declared barred by the statute of limitations. It will be observed that under the statute of 1879 it is unnecessary to obtain a tax deed, but the action may be brought directly on the certificate of purchase, and a decree of foreclosure be rendered thereon; but the action must be brought before the expiration of five years from the date of the certificate. Under the previous holdings of this court, the action must be brought within five years from the time the title failed; in other words, from the time the deed had been declared invalid by a competent tribunal. The change, therefore, is significant, and was, no doubt, intended to fix a definite time within which an action to foreclose the lien should be brought.

Section 3, article 9, of the Constitution, provides that the right of redemption from sales of real estate for taxes and special assessments "shall exist in favor of owners and persons interested in such real estate for a period of not less than two years from such sales thereof;" and that "occupants shall in all cases be served with personal notice before the time of redemption expires." The deed therefore must be taken out, if at all, when the time to redeem expires. If the land is not redeemed, the purchaser may proceed to enforce his lien; but the action must be brought within five years from the date of the certificate whether he demand a deed or not. Section 180 declares that if the action is not brought in five years "the same [the right to bring the action] shall cease to be valid or of any force whatever." The right to foreclose a tax lien is given alone by statute and is governed solely by it. The statute therefore limits the time within which the action may be brought to five years, and this court has no power to extend the right beyond that period. It is a well-known fact that many per-

sons who pay their taxes when they become due, fail to preserve the evidence of such payment, and after the lapse of a few years, if the means of enforcing a lien is maintained by the courts without limit as to time, would in some cases at least, be liable to pay their taxes a second time, and with the addition of costs and interest. The legislature evidently intended to guard against this, hence fixed upon five years as the limit in which to bring the action. A party holding an obligation in writing for the unconditional payment of money is barred unless an action is brought on the same within five years from the time it becomes due or a payment is made thereon, and it is but reasonable that the same rule be applied to the enforcement of a tax lien upon real estate. The courts, under the peculiar wording of a former statute, were compelled to hold that the action could be brought in five years from the time the title *failed;* hence, upon declaring a tax-deed invalid, taxes for ten, twenty, or even thirty years, could be recovered; but that remedy is now taken away, and the act of 1879 has taken its place.