## CLARK et al. v. CITY OF WEATHERFORD et al.

No. 19358. Opinion Filed May 13, 1930.

A. J. Welch and W. P. Keen, for plaintiffs in error.

T. W. Jones, Jr., City Atty., for City of Weatherford.

G. A. Paul, for defendants in error.

EAGLETON, C. Clark et al. brought suit against the city of Weatherford et al. to enjoin collection of special paving taxes in the city of Weatherford. On refusal of the injunction on trial plaintiffs appealed. The only question presented is whether or not property owned by the city and property owned by the board of education lying within the paving district are to be considered when computing the percentage of property owners objecting to the improvement. The plaintiffs give the following undenied figures which, for the purpose of this opinion, will be accepted as correct: Total area in paving district, 923,450 square feet; total school and city owned area, 155,500 square feet, total protesting area, 401,937 square feet. It will thus be seen that if the school and city property is considered, less than 50 per cent. in area of the paving district protested the improvement. If the city and school property is not considered, more than 50 per cent. in the area of the paving district protested the improvement.

The law applicable, and which must be interpreted, is found in sections 5 and 20, chapter 173, Session Laws 1923. The pertinent portion of section 5 reads:

"* * * Such notice shall provide that if the owners of more than one-half in area of the land liable to assessment to pay for such improvement shall not within fifteen (15) days after the last publication of such resolution file with the clerk of said city or with the clerk of said incorporated town their protest in writing against such improvement, then the city or town shall have the power to cause such improvement to be made and contract therefor and to levy assessments for the payment thereof. * * * "

Section 20 reads:

"**Public Property.** Any property which shall be owned by the city, town or county or any board of education or school district, shall be treated and considered the same as the property of other owners, and such city, town, county, school board, or board of education within such district to be assessed, shall annually provide by the levy of taxes in a sufficient sum to pay the maturing assessments and interest thereon."

It is the contention of the plaintiffs that the land owned by the city and school district is not "liable to assessment to pay for such improvement," for the reason that a special method and procedure for the payment of the portion of the cost of the improvement for which the said land would have been liable is otherwise provided, in that the city or board of education "shall annually provide for the levy of taxes in a sufficient sum to pay the maturing assessments and interest thereon." They contend that an assessment cannot be levied against this public property for the reason that no assessment could be enforced against it; it is against public policy to allow such a purported assessment to be enforced and the property sold to liquidate the charge. It is therefore necessary to determine what an assessment is. This court, in Alley v. City of Muskogee, 53 Okla. 230, 156 Pac. 315, said:

"In a general levy of taxes, a contribution is exacted in return for the general benefits of government; in special assessments, the contribution is exacted because the property of the taxpayer is considered by the Legislature to be benefited over and beyond the general benefit of the community."

At an earlier date this court in discussing the same question in Jones v. Holzapfel, 11 Okla. 405, 68 Pac. 511, said:

"It was said in Emery v. San Francisco Gas Co., 28 Cal. 345, that the words 'taxation' and 'taxed,' in section 13 of article 11 of the Constitution of that state which provides that 'taxation shall be equal and uniform throughout the state. All property in this state shall be taxed in proportion to its value,' related to such general taxation upon all property as is levied to defray the ordinary expenses of the state, county, town and municipal governments, and not to assessments levied on the lots fronting on a street in a city to pay the expenses of their improvements.

"The court there said that 'there is another class of expenses, also of a public nature, necessary to be provided for, peculiar to the local governments of counties, cities and towns, and even smaller subdivisions, such as opening, grading, improving in various ways, and repairing highways and streets, and constructing sewers in cities, and canals and ditches for the purpose of drainage in the country. They are gener-

ally of peculiar local benefit. These burdens have always, in every state, from its first settlement, been charged upon the localities benefited, and have been apportioned upon the various properties, but whatever principle of apportionment has been adopted, they have been known, both in the legislation and ordinary speech of the country, by the names of assessments. Assessments have, also, very generally, if not always, been apportioned upon principles different from those adopted in taxation, in the ordinary sense of that term; and any one can see, upon a moment's reflection, that the apportionment, to bear equally, and do substantial justice to all parties, must be made upon a different principle from that adopted in taxation, so-called'."

Section 21, chapter 173, Session Laws 1923, provides for the manner of charging the cost of improvement against the property benefited:

"Section 21. **Manner of Assessment**. The lots, pieces or parcels of land fronting or abutting upon any improvement, shall be chargeable with the cost thereof. * * * "

Section 20, quoted above, provides that the city, town, county, school board, or board of education within such district "to be assessed, shall annually provide by the levy of taxes in a sufficient sum to pay the maturing assessments and interest thereon." The same section provides that the property owned by the city, town, or county or board of education or school district "shall be treated and considered the same as the property of other owners." The intention of the Legislature is clear in requiring that the municipal corporation owning property in the paving district shall be charged with and pay the proportion of the cost of the improvement which the property it owns bears to the entire district. A special assessment is nothing more than a charge levied by a municipal governing body, against property for special benefits conferred by a special improvement. It is true, public owned property cannot be sold to satisfy obligations of the municipal corporation and thus satisfy the obligation in the manner that charges against private property are enforced. To permit this would be against public policy.

Under the old paving law enacted in 1908, appearing in article 12, chapter 29, C. O. S. 1921, section 4593 (section 2, chapter 10, Session Laws 1907-1908) the following section appeared instead of the provision enacted as section 20 of the 1923 law:

"* * * Any property which shall be owned by the city or county or any board of education, or school district, shall be treated and considered the same as the property of other owners; and the property of any city, county, school district, on board of education within the district to be assessed shall be liable and assessed for its proper share of * * * such improvements, in accordance with the provisions of this article."

It appears that there was a question whether or not municipally owned property could petition for or protest such special improvements under the 1908 act. In Berry v. City of Stillwater, 49 Okla. 560, 153 Pac. 870, the question was raised by the following assignment of error:

"(3) The board of education has no power to petition for paving the payment for which the school district would be liable. The school district has only such powers as are given it by statute, and such as are necessarily implied within the scope of these powers expressly conferred; and the power to pave or otherwise improve the streets adjoining the property of the district is not expressly conferred."

This court, referring to section 618, Revised Laws 1910, same being section 4593, C. O. S. 1921, said.

"It seems to us that this section is a complete answer to the third contention of counsel."

The Legislature apparently had in mind, in rewriting this section, that the method of collecting the assessments against municipally owned property was not clear, and so enacted the additional clause providing that taxes should be levied to meet the "maturing assessments."

It seems to us section 20 of the 1923 act is a complete answer to the petition in error of plaintiffs in error in this cause.

The law with reference to laying district sewers is closely analogous to the 1923 street improvement law, save and except the sewer act does not, as does the last portion of section 20 of the 1923 street improvement law, specifically provide for the levying of a general ad valorem tax for the purpose of paying the proportionate part of the cost the municipally owned property bears to the improvement district. Section 4402, C. O. S. 1921, with reference to district sewers, provides:

" * * *The cost of such district sewer shall be assessed and collected as hereinafter provided: but the city shall incur no liability for building district sewers, except when the city is the owner of a lot within the district, and in that case the city shall be liable for the costs of said sewer in the same manner as other property owners within the district."

In City of Drumright v. McCormick, 118 Okla. 140, 247 Pac. 25, decided in 1926, the opinion states that there was no law for the holder of special assessment warrants to sell city property to make collection thereof, that taxes must be assessed and collected pursuant to and under authority of general laws enacted by the Legislature, and that the Legislature not having provided whereby the property of a city may be sold by a holder of public improvement, i. e., sewer warrants, and such being repugnant to our form of government and against public policy, that:

" * * * it becomes the bounden duty of the city authorities, after they have established a sewer district, through and around or adjacent to public property, and issued sewer warrants against the same, to provide in their annual budget for a levy sufficient to pay and retire such warrants as the same fall due, and the city cannot escape its liability by offering to deed city property to the holder of such warrants. It being against public policy to sell public lands for taxes, the holder of such warrants may not foreclose his lien against the land, but must resort to the courts to obtain a personal judgment against the city. If the contractor is denied the right to foreclose his lien by the forced sale of public lands, and is denied the right of a personal judgment against the city, to be paid as other judgments are provided for and paid, our public buildings must of necessity be without pavements and sewers, unless a way be found to establish and declare paving and sewer districts not adjacent to or abutting upon any other property, and to provide for payment of such improvements out of the general revenues."

It will thus be seen that the Legislature, in passing the 1923 act, merely declared the law which earlier existed for the payment of assessments made for the cost of construction of pavements adjacent to municipally owned property. Such special assessments against municipally owned property are not even computed in determining the debt limit of a municipality, as was stated in City of Perry v. Johnson, 106 Okla. 32, 233 Pac. 679:

"Section 26, article 10, of the state Constitution is a 'debt' limit and not a 'tax' limit provision, and does not apply to assessments for benefits occasioned by reason of public improvements levied against real estate owned by a municipal corporation."

The law says that municipally owned property "shall be treated and considered the same as the property of other owners," so all the property within the paving district is chargeable or assessable with the proportionate part of the cost of the improvement and municipally owned property is "land liable to assessment," and must be computed with the other land of the improvement district in determining whether or not "owners of more than one-half in the area of land liable to assessment" have filed protest to the making of the improvement which the city has by resolution declared a necessity.

So, in this case, there being a total area in the special improvement district of 923,-450 square feet, a written protest filed by the owners of land representing a total area within the district of but 401,937 square feet is a protest of less than one-half of the total area in the district, and insufficient to divest the governing body of the city of the power to enter into the contract for the improvement. The trial court properly entered its decree denying the plaintiffs an injunction. The cause is therefore affirmed.

BENNETT, HALL. DIFFENDAFFER, and HERR, Commissioners, concur.

By the Court: It is so ordered.

Note.—See "Municipal Corporations," 44 C. J. §2806, p. 481, n. 94; §2883, p. 525, n. 99.