CITY OF BRISTOW ex rel. HEDGES et al. v. GROOM et al.

No. 30312. May 29, 1944.

Rehearing Denied Oct. 3, 1944.

*151 P. 2d 936.*

Norman E. Reynolds and W. Otis Ridings, both of Oklahoma City, for plaintiffs in error.

Wm. L. Cheatham, of Oklahoma City, and Lloyd L. Smith, of Bristow, for defendants in error.

BAYLESS, J. This is an action to foreclose special assessment liens for street improvements under the provisions of chapter 173, S. L. 1923. The question presented is whether the general statutes of limitations apply to such actions.

In 1924, the city of Bristow, pursuant to the provisions of chapter 173, S. L. 1923, created street improvement district No. A-19 and levied special assessments against the properties therein. The assessments were payable in ten equal annual installments, the last falling due September 1, 1934. The city then issued street improvement bonds, series No. A-19, Nos. 1 to 91, inclusive, payable solely from the proceeds of said assessments. The bonds were payable in their numerical order on October 1, 1934, or before then upon call of the city treasurer.

Default was made in payment of certain of the bonds, and on March 22, 1940, more than five years after the last assessment installment became delinquent and the bonds became payable, plaintiffs, the owners of bonds Nos. 70, 73 to

75, inclusive, and Nos. 80 to 85, inclusive, brought this action to foreclose the special assessment lien as authorized by 11 O. S. 1941 § 107. A separate cause of action was stated against each lot or group of lots separately owned, showing the amount of each delinquent installment, the year for which the same was due, and the amount of interest thereon. The years for which the delinquent installments were due upon the different pieces of property ranged from 1925 to 1934.

The defendants filed demurrers to the petition upon the ground, among others, that the causes of action were shown to be barred by the statute of limitations. From a judgment sustaining the demurrers upon such ground, plaintiffs appeal.

1. Plaintiffs first contend that no statute of limitations applies to the action to enforce such special assessments lien by foreclosure provided by section 107, supra. This contention involves two points: (1) That the action provided by section 107, supra, is a "special proceedings", which generally are not subject to statute of limitations, citing Morgan v. City of Ardmore, 182 Okla. 542, 78 P. 2d 785, which is cited and followed in Hann v. City of Clinton, 131 Fed. 2d 978; and (2) an intention manifest by the language of the Act of 1923 to except the action provided for in section 107 thereof from the operation of the statute of limitations, 12 O. S. 1941 §§ 91-98, the pertinent provisions of which are as follows:

"Civil actions can only be commenced within the periods prescribed in this article, after the cause of action shall have accrued; but where, in special cases, a different limitation is prescribed by statute, the action shall be governed by such limitations." 12 O. S. 1941 § 92.

"Civil actions, other than for the recovery of real property, can only be brought within the following periods, after the cause of action shall have accrued, and not afterwards:

"First: Within five years: An action upon any contract, agreement or promise in writing.

"Second: Within three years: An action upon a contract express or implied not in writing; an action upon a liability created by statute other than a forfeiture or penalty. . . .

"Sixth: An action for relief, not hereinbefore provided for, can only be brought within five years after the cause of action shall have accrued." 12 O. S. 1941 § 95, (1), (2), (6).

These sections of the statute of limitations apply to "civil actions" as differentiated from "special proceedings." For the differences between the two, see 12 O. S. 1941 §§ 3-8; and Harryman v. Bowlin, 153 Okla. 202, 4 P. 2d 1011; Hickman v. Gumerson, 190 Okla. 514, 125 P. 2d 765, and 1 C.J.S. 1094. From a consideration of the language of sections 4 and 5 above, the two cases just cited and the text and many decisions cited in the footnotes thereto, we think it may be said that "civil actions" are the rule, "special proceedings" are the exception.

We are of the opinion that the present action brought under section 107, supra, is one for the "enforcement or protection of a right" as defined in section 4, supra, and requires the various procedural steps outlined in the two cases just cited, and, therefore, a civil action as defined in section 8, supra, and is not a "special proceedings."

In arriving at this conclusion we are not unaware of our language in Morgan v. City of Ardmore, supra, which was adopted and followed by the Circuit Court of Appeals in the City of Clinton Case, supra, wherein actions of this type were referred to as a "special proceeding." The question here was not there involved and the distinction between "civil actions" and "special proceedings" was not involved in our decision or thought of. In that decision the action was referred to as an "action" and also as a "special proceedings" loosely and without the precision which ordinarily is observed in the use of these two distinct terms. Therefore, insofar as Morgan v. City of Ardmore, supra, is in conflict with this decision with respect to

the nature of the action being prosecuted, it is expressly overruled.

Also, in reaching this conclusion we are aware of the terms used by the Legislature in section 107 and have observed the uniformity in the meaning thereof. In that section the right of action provided is referred to six times as an "action," once as a "civil action" and once as a "suit." Not once is it referred to as "special proceeding." In addition it is required that summons should be issued on the petition filed as in other "civil actions." It is provided that judgment shall be rendered and the terms thereof are stated. It is provided that the judgment may be enforced by an order of sale as in the case of the sale of real estate under execution.

The statutes of limitations, above, are found in our Code of Civil Procedure and are comprehensive. By the plain terms of section 92, they are intended to apply to all "civil actions," not involving sovereign or public rights (17 R.C.L. 689; 37 C.J. 710), including civil actions authorized by future Legislatures, except "where, in special cases, a different limitation is prescribed by statute." Section 95 was intended to apply to all such civil actions, "other than for the recovery of real property," and to be certain that none were omitted the sixth paragraph was added. In view of the comprehensive nature of sections 92 and 95, above, it is clear that every such civil action, other than for the recovery of real property, is governed by the provisions of section 95, unless the Legislature has either prescribed a different limitation period as to a particular civil action or has indicated an intention that the particular civil action shall not be barred by any statute of limitations. Indeed, it has been said with reference to statutes of limitations that "no exceptions can be claimed in favor of particular persons or cases unless they are expressly mentioned." Atchison, T. & S. F. Ry. Co. v. Atchison Grain Co., 68 Kan. 585, 75 P. 1051; Woodbury v. Shackleford, 19 Wis. 55. But we need not go that far in the instant case. The 1923 Act prescribes no different or

special period of limitations for such foreclosure actions, nor did it expressly say that such action should not be barred by any statute of limitations. The question, then, is whether because of the other provisions of the act and the nature of the right the Legislature may be reasonably said to have intended that such action should not be subject to the broad terms of the statutes of limitations above quoted.

The cardinal rule of statutory construction, to which all other rules are subordinate, is to ascertain the intention of the Legislature (25 R.C.L. 960), and this should ordinarily be done by a consideration of the language of the statute, and the courts should not read into a statute exceptions not made by the Legislature. 59 C.J. 974; 25 R.C.L. 961, 963. It has been well said that "seeking hidden meaning at variance with the language used is a perilous undertaking which is quite as apt to lead to an amendment of a law by judicial construction as it is to arrive at the actual thought in the legislative mind." 25 R.C.L. 963. See, also, Lewis' Sutherland Statutory Construction (2d Ed.) vol. 2, p. 744, § 388; Dewey v. United States, 178 U.S. 510, 44 L. Ed. 1170, 20 S. Ct. 981. Statutes of limitations are now generally looked upon with favor as statutes of repose, and should be reasonably construed and applied. 37 C. J. 689, § 9; 34 Am. Jur. 18, § 10.

Since no different limitation is prescribed for the present action, we start with the presumption that the general statutes of limitations were intended to apply. Plaintiffs argue, however, that the intention that they shall not apply is implied by the provisions of section 23 of the 1923 Act (11 O.S. 1941 § 103) that the lien of the assessment shall be "coequal with the lien of other taxes" and shall "continue as to unpaid installments and interest until such assessment . . . shall be fully paid." These provisions are found in identical language in the earlier paving law as revised in 1910. R. L. 1910, § 634; C.O.S. 1921, § 4609. Prior to the enactment of

the Act of 1923, the sole method provided for the enforcement of the lien of delinquent special asseessments was by certification thereof by the city or town clerk to the county treasurer, who was thereupon required to collect the same in the manner provided for collection of other delinquent taxes. Glasser v. Goltry, 136 Okla. 182, 276 P. 738. The Act of 1923, while retaining this method of enforcement (11 O. S. 1941 § 106), provided the additional method here pursued.

We must not confuse the quality or duration of the lien with the procedure for its enforcement. 48 Am. Jur. 745, § 226, and notes. Under the 1923 Act the lien itself is coequal with the lien of other taxes, and does continue until the assessments are fully paid, and since the proceedings for the enforcement thereof by the county treasurer do not constitute a civil action, the enforcement by that method was not barred by any statute, and there was no effort made by the Legislature to bar it until the enactment of the 1939 law. It does not follow, however, that when the Legislature by the Act of 1923 gave to the bondholders the additional right to enforce the lien by civil action in the district court, it intended that the right to proceed by that method should never be barred. If it had intended such result, it could have said so in few words. It seems more reasonable to suppose that the Legislature had in mind the broad terms of the general statutes of limitations and intended such foreclosure actions to be governed by such statutes as well as by all the other provisions of the Code of Civil Procedure, except as otherwise provided in the act, and the act does set out in detail the provisions to be inserted in the judgment, peculiar to such actions, and materially differing from judgments in other civil actions.

In reaching the conclusion that the statutes of limitations apply to such actions we have carefully considered the many cases cited by both plaintiffs and defendants, as well as other authorities.

At least two states, Kentucky and New Mexico, have statutory provisions similar to our own permitting the assessments to be collected either as other taxes are collected or by foreclosure action, and in each state the general statutes of limitations have been held applicable to such foreclosure actions. City of Covington v. Patterson, 191 Ky. 370, 230 S.W. 542; City of Middlesboro v. Terrill, 259 Ky. 47, 81 S. W. 2d 865; Altman v. Kilburn, 45 N.M. 453, 116 P. 2d 812, 136 A.L.R. 554.

In general the cases may be divided into the following classes: (a) Cases holding that the city does not enforce the lien as the exercise of a governmental function so as to preclude application of the statute of limitations (Altman v. Kilburn, above; Hartman v. Hunter, 56 Ohio St. 175, 46 N.E. 577; Knoxville v. Gervin, 169 Tenn. 532, 89 S.W. 2d 348, 103 A.L.R. 877. Contra, Town of Asheboro v. Morris, 212 N.C. 331, 193 S. E. 424. For other cases, see 136 A.L.R. 572, note); (b) cases in which a provision that the lien shall continue until the debt is paid is held not to prevent the running of the statute of limitations (Woods v. Hyde, 64 Cal. App. 433, 222 P. 168; City of Knoxville v. Gervin, above; Kansas City v. Field, 285 Mo. 253, 226 S.W. 27; Altman v. Kilburn, above. Contra, Bell v. City of New York, 66 App. Div. 578, 73 N.Y.S. 298; City of Hartford v. Mechanics Saving Bank, 79 Conn. 38, 63 Atl. 658; City of Statesville v. Jenkins, 199 N. C. 159, 154 S. E. 15; Lincoln St. Ry. v. City of Lincoln, 61 Neb. 109, 84 N.W. 802; Fisk v. City of Keokuk, 144 Iowa, 187, 122 N.W. 896); and (c) cases where the statute is silent as to the duration of the lien, or such question is not discussed, and general statutes of limitations, or statutes limiting the time in which to commence proceedings for the collection of taxes, have been held applicable (City of Middlesboro v. Terrill, above; Kerwin v. Nevin, 111 Ky. 682, 64 S.W. 647; Pleadwell v. Missouri Glass Co., 151 Mo. App. 51, 131 S.W. 941; St. Louis v. Newman, 45 Mo. 138; Horn v. City of Charleston, 91 W. Va. 73, 112 S.E. 239; Cisco v. Varner (Tex. Comm. App.) 16 S. W. 2d 265). See, also, McQuillen, Municipal Corporations, §§ 2261, 2295;

44 C. J. 838, 839; St. Louis Co. v. Marvin Planing Mill Co., 228 Mo. App. 1048, 58 S.W. 2d 769; City of Louisa v. Horton, 263 Ky. 739, 93 S. W. 2d 620; People's Trust & Savings Bank v. Hennessey, 106 Ind. App. 257, 153 N.E. 507; Lemhi Co. v. Boise Live Stock Loan Co., 47 Idaho, 712, 278 P. 214; Town of Morganton v. Avery, 179 N.C. 551, 103 S.E. 138; Waggoner v. Board of Councilmen of Frankfort, 30 Ky. L. 847, 99 S.W. 918; State v. City of Shreveport, 151 La. 203, 91 So. 678; Cheatham v. Palmer, 176 Ga. 227, 167 S.E. 522; Dickinson v. City of Trenton, 35 N.J. Eq. 416; Gould v. Grout, 110 Minn. 324, 125 N.W. 273; Shepard v. People, 200 Ill. 508, 65 N.E. 1068; Wygant v. Dahl, 26 Neb. 562, 42 N.W. 735; Nevada v. Yellow Jacket Silver Mining Co. 14 Nev. 220; 103 A.L. R. 885, note.

The cases which hold that the enforcement of the lien is not barred are inapplicable in this state, because (a) although the action of foreclosure is brought in the name of the municipality, the real parties in interest are the bondholders, who control the litigation, and the action is one for the enforcement of private rights (Oklahoma City v. Vahlberg, 185 Okla. 28, 89 P. 2d 962; see, also, Board of County Com'rs v. Good Township, 188 Okla. 151, 107 P. 2d 805, defining public rights); and (b) we give effect to the provision of the 1923 Act that the lien shall continue until fully paid and be coequal with the lien of other taxes by holding such provisions applicable in a proceeding to enforce collection by the county treasurer (Settle v. Frakes, 156 Okla. 53, 9 P. 2d 768; Perryman v. City Home Builders, 121 Okla. 150, 248 P. 605). None of the cases cited hold that where a cumulative remedy by civil action is given, such action is not subject to the bar of the general statute of limitations.

Neither do we believe that the provisions of article 6, ch. 33, S.L. 1939 (11 O.S. 1941 §§ 242-242(o)), indicate a legislative understanding that the right to foreclose the assessment lien by civil action in the district court was not subject to any statute of limitations as urged by the plaintiffs. That act provides that the lien of assessment as to any "bond" shall cease to exist after three years from the due date of the bond unless the holder thereof commences a foreclosure action or agrees to accept refunding bonds within such period. The act deals with the lien as to particular bonds, and if such lien as to any such bond is lost by the lapse of time therein provided, it is lost as to every property in the district. This is a very different question than the one of whether the right of the bondholders to enforce an existing lien upon a particular piece of property by a civil action is barred by the statutes of limitations relating to civil actions. There is nothing in the 1939 Act to indicate that if the bondholders do proceed by civil action, the property owners may not interpose the bar of the statute to such action if it has in fact run. On the contrary, by section 15, the Legislature provided:

" . . . nor shall any proceedings hereunder operate to make binding upon any property owner any previous invalid obligation but every defense available against the original assessment shall be preserved to and be available against any issue or refunding bonds issued hereunder."

The 1939 Act was passed so as to preserve the rights already possessed by the bondholders, but required them to timely assert such rights. It was not intended to take away any of the rights of property owners, but rather to be beneficial to them by giving them rights not given under the prior laws, such, for instance, as the provision that they could pay the reassessment liens by refunding bonds, the provision that all actions or proceedings to compel action by the city and town officers, as well as foreclosure actions, would be barred after the expiration of a certain period of time, and the provision that after such period of time had run the lien should cease to exist. The provision "that in all cases where the period of limitation *herein mentioned* has expired or will expire prior to November 1, 1939, the holder of such bonds shall have until December 1, 1940, in which to pursue

his remedy or obtain the benefits of this Act," was intended to protect the act from an attack on constitutional grounds by giving a reasonable time for bondholders to pursue their existing remedies. It was not intended to revive a right barred by any other statutes of limitations because the Constitution, art. 5, sec. 52, forbids, or to indicate a legislative belief that there was no statute of limitations applicable to a foreclosure action.

In any event, the determination of the meaning of the Act of 1923 calls for the exercise of judicial power, and while the understanding of the Legislature of 1939 as to its meaning is entitled to consideration and weight, the duty of interpreting it rests finally upon the courts, and we must give it that construction which we believe the Legislature of 1923 intended. 59 C. J. 1033; 25 R.C.L. 1047; Board of Com'rs of Cherokee County v. Hatfield, 121 Okla. 28, 247 P. 77.

We conclude that the present foreclosure action is subject to the general statutes of limitations.

2. Having decided that the action is subject to the general statutes of limitations, the next question presented is, which of the subdivisions of section 95, above quoted, are applicable? We think it is the three-year statute found in the second subdivision. It is "an action on a liability created by statute." The action is not on the bonds, but to enforce the assessment lien which is imposed by law. The property owners, who are the defendants in the action, were not parties to the bonds, and the liability of their property is not based on any "contract, agreement or promise in writing" made by them so as to bring the action under the first subdivision. The courts of several states have held such an action to be based on "a liability created by statute" as that term is used in their limitation laws. See 103 A.L.R. 889, note. From this note it appears that the courts of some states have held that the action is governed by the statutes of limitations applying to "actions not otherwise provided for." But upon consideration of the statutes of limitation of those states we do not find they have statutes relating to actions on statutory liability. In all of those states where there are statutes similar to subdivisions 2 and 6 of section 95, supra, it is uniformly held that the period of limitation governing actions on statutory liability applies.

The next problem that faces us is to determine when the statute of limitations began to run, that is to say, When did the cause of action accrue? In general, it may be said the statute began to run at the very first time any bondholder could sue on a delinquency. When 11 O. S. 1941 § 103 is read it is apparent that the Legislature used the words "installment" and "assessment" with due care with respect to what each meant. As so used, "assessment" meant the total of the cost apportioned against a particular property and "installment" meant the one-tenth part thereof due each year. With this premise, consider the language used: " . . . such special assessments, and each installment thereof and the interest thereon are hereby declared to be a lien against the lots and tracts of land so assessed . . .and such lien shall continue as to unpaid installments and interest until such assessments and interest thereon shall be fully paid . . . " The language quoted discloses a deliberate attempt on the part of the Legislature to tie the delinquent installment to the assessment. The state of the delinquency of the assessment could not be determined until the last installment fell due. Thus the lien of each delinquent installment was made coexistent with the lien of the entire assessment. Strength is added to this conclusion when the language quoted above is contrasted with the language used in the statutes of other states where the cause of action is granted upon the delinquent installment in such specific terms as not to permit of debate. See Altman v. Kilburn, 45 N.M. 453, 116 P. 2d 812, 136 A.L.R. 554, where, in addition, an acceleration clause was added; City of Knoxville v. Gervin, 169 Tenn. 532, 89 S.W. 2d 348, and other cases to illustrate this found in Am. Dig (West)

Mun. Corp. Key Nos. 522 and 530. When the language of 11 O. S. 1941 § 107 is considered in connection with that of section 103, supra, additional weight is lent to the conclusion. In section 107, it is said:

"Any holder of any street improvement bond . . . shall have the right to institute . . . an action . . . to foreclose the lien of such assessment whenever such assessment is delinquent at least for a period of twelve (12) months . . . "

Throughout this section in which the action is authorized, the procedure is outlined, the details of the judgment are prescribed, and the execution sale is provided for, and the number of actions is limited, the Legislature constantly used the word "assessment," and nowhere referred to the delinquency of an installment nor to the lien of an installment. The omission to mention installments and the reiteration of the word "assessment" make the contrast between the two clear and lend emphasis to the manner in which the two words were used, and fully disclose that the Legislature did not intend to grant a cause of action as to each delinquent installment, or a series of actions throughout the ten-year period.

Another factor is to be considered. What are the rights of the bondholder? His bond falls due subsequent to the due date of the last installment. Prior to that date, unless specially called according to law, the bondholder can only expect the payment of his interest. If enough property owners pay the installments due on their properties during this period to enable the city clerk to pay the interest due on the bond, the bondholders thereby receive all they are entitled to prior to the due date of the bonds. However, if during the same time other property owners are becoming delinquent in respect to their installments, if the statute of limitations began to run thereon, the bondholders might find many properties not amenable to action to foreclose when the bonds fell due by their terms. Thus bondholders who had received their interest when due, and who were thereby without any complaint about the status of their bonds, or without any basis for a cause of action to foreclose their lien, would be barred nevertheless. Also to be considered in this connection is the fact that the city clerk may have certified the delinquent payments to the county treasurer for sale and there would thus be a clash between the two remedies. Thus, since no cause of action under the Act of 1923 arises upon a delinquent installment during this ten-year period, the method of collection through sale by the county treasurer is exclusive. In this manner the two remedies will not clash and full recognition can be allowed to the long existent statutory scheme for the collection of installments by sale by the county treasurer, as mentioned above by our reference to Settle v. Frakes.

If, after the last installment has matured, there remains a delinquency on the assessment and a period of twelve months passes during which neither the city clerk nor the county treasurer collects the delinquent balance due, the bondholder may then institute the action authorized in section 107, supra. When the action first may be instituted, the statute of limitations begins to run.

Applied to this action, the action first could have been brought after the expiration of twelve months from September 1, 1934, or September 2, 1935. The action was filed, as before stated, March 22, 1940. Thus, it was filed too late.

3. Plaintiffs next contend that the judgment of the trial court holding the action to be subject to the statute of limitations is in violation of the provisions of the State and Federal Constitutions forbidding the impairment of the obligation of contracts. They argue that we have heretofore held the lien of assessment to be perpetual, and that the laws in force as construed by the highest court of the state at the time of the issuance of the bonds became a part of the contract, the obligation of which may not be impaired by a subsequent change in the law.

Plaintiffs fail to distinguish between the lien and the procedure for its en-

forcement. Our decisions herein in no way conflict with our previous decisions. As pointed out above, the lien remains, and these bondholders may, unless prevented by the Act of 1939 (a question which we do not now decide), require the county treasurer to enforce the liens under the tax sale and resale laws.

By this decision we simply hold that the civil action to foreclose the bonds by suit in the district court may be barred by the statute of limitations, and we have never held otherwise.

4. The bondholders finally contend that the judgment appealed from takes their property without due process of law and denies them the equal protection of the laws, in violation of the State and Federal Constitutions. They predicate this argument on the proposition that the remaining method of enforcement of the liens under the tax sale and resale laws has proved to be ineffective because of the failure of the county treasurers to comply with the provisions of said laws and because of lack of bidders at such sales. They cite no authorities in support of such argument. It is a sufficient answer to say that throughout the years the bondholders had the right to compel the county treasurer to perform his duties by mandamus.

It follows that since more than three years had elapsed between the accrual of plaintiffs' cause of action as to the last installment and the commencement of the present action, the cause of action was barred as to all installments by the three-year statute of limitations, 12 O. S. 1941 § 95 (2), and the court correctly sustained the demurrer to the petition.

Affirmed.

RILEY, WELCH, HURST, DAVISON, and ARNOLD, JJ., concur. CORN, C.J., GIBSON, V.C.J., and OSBORN, J., dissent.