**VERSLUIS et al. v. TOWN OF HASKELL, OKL.**

**SAME v. UNION GRADED SCHOOL DIST. NO. 2 OF MUSKOGEE COUNTY, OKL.**

Nos. 3197, 3198.

Circuit Court of Appeals, Tenth Circuit.

March 25, 1946.

L. W. Randolph, of Muskogee, Okl., for appellant Leonard Versluis.

W. R. Banker, of Muskogee, Okl., for appellant William E. Johnston and W. R. Johnston & Co.

Malcolm E. Rosser, of Muskogee, Okl., and N. E. Sharp, of Haskell, Okl., for appellee Town of Haskell, Okl.

Richard Martin, of Muskogee, Okl., for appellee Union Graded School Dist. No. 2.

Before PHILLIPS, BRATTON, and MURRAH, Circuit Judges.

MURRAH, Circuit Judge.

The sole question presented by this appeal is whether two class actions brought by Leonard Versluis to collect unpaid paving assessments levied against property owned by the town of Haskell, Oklahoma and Union Graded School District No. 2 of Muskogee County, Oklahoma, are barred by the general statute of limitations. The cases were submitted to the trial court on the pleadings and an agreed statement of facts, and since the issues involved are identical the two cases have been consolidated here on appeal. Jurisdiction is based solely upon diversity of citizenship and requisite amount in controversy, which according to the unchallenged finding of the trial court is present.

By appropriate statutory proceedings, Street Improvement District No. 1 of the town of Haskell, Oklahoma, was created for the purpose of paving and otherwise improving the streets located therein. Pursuant thereto, and on September 15, 1920, the town of Haskell issued its street improvement bonds in the aggregate amount of $262,000, consisting of 524 bonds in the principal sum of $500 each, bearing interest at the rate of 6% per annum from date until maturity on September 15, 1930, and 10% per annum thereafter. To provide a fund for the payment of the bonded indebtedness, assessments were levied against the lots in the paving district, to be paid in ten annual installments, with interest at the rate of 7% per annum

on the unmatured portion and a penalty of 18% per annum after maturity.

At the time the bonds were issued, and at all times since, the town of Haskell and Union Graded School District No. 2, each owned, used and occupied in their governmental capacity certain lots in the paving district, against which assessments were levied. No part of the assessments against the town of Haskell has been paid and only the assessments due for the years 1921 and 1922, were paid by the School District.[1]

Approximately fourteen years after the maturity date of the bonds plaintiff, as the holder of more than 100 bonds, brought these actions in the United States District Court for the Eastern District of Oklahoma, in his own behalf and in behalf of others similarly situated "for the amount of such unpaid assessments, together with interest, penalties and damages for failure to pay same when due". By leave of court, W. R. Johnston & Company and William E. Johnston, as owners of certain of the bonds, filed petitions of intervention in both cases, adopting the allegations and prayers of appellant, Leonard Versluis.

The town of Haskell answered admitting the issuance of the street improvement bonds, but denying the validity of the assessments against the property of the municipality, and pleading the statute of limitations. By its answer the School District set out the partial payment of the assessments levied against its property and also pleaded the statute of limitations.

Adopting the agreed statement of facts, the trial court held that the cases stated causes of action which entitled appellants to the relief sought, but applied the three year statute of limitations as a bar to the maintenance of the suits. In so doing, the court noted that the question of whether a municipality or school district could invoke the statute of limitations in a suit for a personal judgment for the amount of the special assessments levied against its property had not been directly decided by the Supreme Court of Oklahoma, but in arriving at its conclusions the court followed by analogy other decisions of the Oklahoma court where the defense of laches or limitations had been sustained in cases involving paving assessments under the same or substantially similar paving laws.

Appellants contend on appeal that since the special assessments created a statutory lien against the property coequal with the lien of other taxes, to continue until paid, and there being no expressed intention that the action should be barred by limitations, they do not apply. It is argued that the cases relied upon by the trial court as analogous are clearly distinguishable and not controlling. In any event, it is said that the statute did not begin to run until the asserted causes of action were maintainable and that they were not maintainable until less than three years from the date they were commenced.

As the learned trial court recognized, in cases of this type where the only basis of our jurisdiction rests upon diversity of citizenship, and Federal courts are made "another available forum", it is the duty of the Federal courts to ascertain and follow the state law as declared by the latest expression of the state courts. Huddleston v. Dwyer, 322 U.S. 232, 64 S.Ct. 1015, 88 L.Ed. 1246. Concededly, the Supreme Court of Oklahoma has not passed upon the precise point presented. It has, however, had much to say concerning cognate questions which tend to point the way, and from which we must fashion our conclusions. Where as here, our judgment is but a forecast of what we think the state courts would determine the law to be, it would of course be more efficient to relegate the parties to the state forum for the adjudication of the issues, but we cannot decline to exercise the jurisdiction squarely conferred simply because of the difficulties of ascertaining the governing state law. Meredith v. Winter Haven, 320 U.S. 228, 64 S.Ct. 7, 88 L.Ed. 9.

When in 1920, the improvement bonds, involved here, were authorized and issued the 1910 Street Improvement Laws, (Article XII, c. 10, R.L.1910) were in force and pertinently provided that any property owned by the city or county, or any board of education or school district, should be treated and considered the same as the property of other owners, and the property of any city, school district or board of education within the district to be assessed should be liable and assessed for its proper share of the cost of such improvements. Sec. 618. And, the special

[1] The installments of assessments for the years 1922 were paid as the result of a mandamus suit filed by Fred W. Martin, Trustee in 1936, on behalf of himself and others similarly situated.

938

assessments, authorized to be levied against the property, and each instalment with interest thereon were declared to be a lien against the lots and tracts so assessed, co-equal with the lien of other taxes and prior and superior to all other liens against such lots or tracts, until fully paid. Sec. 634. Upon default of any installment and interest it became the statutory duty of the city clerk of the City or Town levying the assessments to promptly and on or before the 15th day of September of each year after the maturity date, to certify the delinquent installment and interest to the County Treasurer of the County in which the City or Town is located. Thereupon it became the statutory duty of the Treasurer to place the delinquent installment and interest upon the next delinquent tax list and to collect the same "as other delinquent taxes are collected" and to pay the proceeds to the City Treasurer for disbursement on account of the assessments levied. Secs. 642 and 643.

But, when these bonds were issued it was against the public policy of the State to allow property belonging to a public corporation and used for public purposes, such as property belonging to a city or school district, to be sold to satisfy delinquent special assessments. Instead, the owner of improvement bonds or securities was allowed to maintain an action for personal judgment against the sovereign owner of the benefited public property for the amount of the delinquent special assessments levied against such public property for the payment of the bonds or securities, plus interest thereon. City of Drumright v. McCormick, 118 Okl. 140, 247 P. 25. See also Clark v. City of Weatherford, 143 Okl. 165, 288 P. 278, and Blythe v. City of Tulsa, 172 Okl. 586, 46 P.2d 310, 313. Insofar as we can ascertain there is nothing in the statutes or prevailing rules of decision to indicate that such action for personal judgment was a special proceedings or that it was not subject to the same statute of limitations governing any other civil action.

Apparently relying upon the foregoing remedy certain holders of paving improvement bonds, in Independent School District v. Exchange National Company, 164 Okl. 176, 23 P.2d 210, 211, 95 A.L.R. 685, brought an action on December 19, 1930 (within three years from the date of maturity of the last bond on September 1, 1928) for a personal judgment against a school district to recover delinquent assessments against benefited property of the district which had been proportionately assessed to pay the improvement bonds. As in our case, the bonds were issued in pursuance of the 1910 Street Improvement Laws, supra. The trial court rendered judgment against the school district for the amount of the unpaid assessments, plus interest and penalties. The Supreme Court, however, reversed, holding that since the paving statute did not expressly authorize the recovery of a judgment against the school district for the delinquent installments, the asserted remedy was not available. The court pointed out that inasmuch as the board of education, as the owner of the benefited property within the district, was required as a ministerial duty to include an amount equal to each installment in the annual estimate for the purpose of paying the same "the remedy of mandamus was available to plaintiff and might be exercised for each and every year the governing boards failed to perform their respective duties", and that such remedy was exclusive. The doctrine as announced in City of Drumright v. McCormick, supra, and approved in Clark v. City of Weatherford, supra, was expressly repudiated.

■ At the time of this decision, and for some time thereafter, it was the prevailing view that the remedy of mandamus was not available to compel the levy of taxes in one fiscal year to pay the installments which matured in prior years, on the theory that the Constitution (Secs. 26 and 29, Article 10) prohibited the application of general funds of one specific fiscal year to the payment of the obligations of a prior year. See St. Louis-San Francisco R. Co. v. Choctaw County Excise Board, 173 Okl. 312, 48 P.2d 312. Thus, by force of these decisions mandamus, although available, was rendered virtually ineffectual. It is well settled in Oklahoma that the governing statutes, as construed by the Oklahoma courts at the time of the authorization and issuance of the improvement bonds enter into and become an essential part of the contract in such a way that the obligations they impose cannot be impaired by subsequent change in the law, and for the purposes of this rule, a change of decision after the rights are acquired is tantamount to an amendment of the law by legislative enactment. Hann v. City of Clinton, 10 Cir., 131 F.2d 978; McGrath

v. Oklahoma City, 156 Okl. 34, 9 P.2d 711; Prince v. Ypsilanti Sav. Bank, 140 Okl. 131, 282 P. 282; Nelson v. Pitts, 126 Okl. 191, 259 P. 533, 53 A.L.R. 1137; and Perryman v. City Home Builders, 121 Okl. 150, 248 P. 605. But, it also seems well settled that the remedy for the enforcement of the vested right may be changed by legislation or judicial construction in the public interest, provided the new remedy afforded is substantially equivalent to the old. Sutton v. Kalka, 141 Okl. 233, 285 P. 1, quoting from Seibert v. United States, 122 U.S. 284, 7 S.Ct. 1190, 30 L.Ed. 1161; and Meyer v. City of Eufaula, 10 Cir., 132 F.2d 648; Wood v. Lovett, 313 U.S. 362, 61 S.Ct. 983, 85 L.Ed. 1404; Honeyman v. Jacobs, 306 U.S. 539, 59 S.Ct. 702, 83 L. Ed. 972; Richmond Mortgage & Loan Corp. v. Wachovia Bank & Trust Co., 300 U.S. 124, 57 S.Ct. 338, 81 L.Ed. 552, 108 A.L.R. 886; Home Building & Loan Ass'n v. Blaisdell, 290 U.S. 398, 54 S.Ct. 231, 78 L.Ed. 413, 88 A.L.R. 1481.

In Board of Education of City of Duncan v. Johnston, 189 Okl. 172, 115 P.2d 132, 134, owners of paving bonds secured a writ of mandamus in the Oklahoma trial court to compel the Board of Education of the City of Duncan to include in its estimates for the fiscal years 1937, '38 and '39 tax levies to pay delinquent installments and interest on paving bonds for the fiscal years 1924, '25 and '26. The bonds were issued in 1922 in pursuance of the 1910 paving laws and matured either in 1931 or 1932. Although the Supreme Court of Oklahoma did not allude to the constitutional prohibition against levy of taxes in one fiscal year to pay the obligations of other and prior years, it reversed the trial court holding that "while a lien co-equal with that of taxes is created by statute * * * it may be extinguished by a mere lapse of time * * * within which under the provisions of civil procedure * * a civil action can be brought to liquidate the obligation", and that since more than a decade had elapsed since it was the duty of the board of education to make the tax levies with which to pay the assessments the action was barred by laches. The court cited and quoted from Independent School District v. Exchange National Company, supra, to the effect that our system for collection of taxes was never intended to permit bondholders to sit for a period of 10 years without taking advantage of their right to enforce payment of the assessments, thereby allowing them to bear 18% penalties from due date.

In the more recent case of Wilson v. City of Hollis, 193 Okl. 241, 142 P.2d 633, 637, 150 A.L.R. 1385, the bondholder sought a writ of mandamus to compel the members of the Board of Education to provide in its annual budget for the fiscal year 1940–1941, funds to pay the 1929 delinquent installments, together with accrued interest and penalties on street improvement assessments levied against the Board's property in pursuance of Sec. 20 of the 1923 law, 11 O.S.A. 100, which superseded the 1910 law, and to make similar provisions for the payment of remaining delinquent installments on the bonds which were issued in 1927 and matured in 1936. Among other defenses, the Board of Education pleaded the statute of limitations and laches as a bar to the mandamus action. The trial court issued the writ and the question of the application of limitations or laches was saved on appeal. The Supreme Court was of the opinion that when the Act was "studied and applied to the situation" before it, "limitation or laches is not a bar to plaintiff". In reaching this conclusion the court apparently did not find it necessary to overrule or mention its previous pronouncements in Board of Education v. Johnston, 189 Okl. 172, 115 P.2d 132. The court went on to point out that since the law (Sec. 20 of the 1923 Act, 11 O.S.A. § 100, as did the 1910 law, see Independent School District v. Exchange National Co., supra) [2] imposed a mandatory duty upon the proper officials to make annual levies to pay installments as

---

[2] Sec. 618 of the 1910 Street Improvement Laws provides: "Any property which shall be owned by the city or county, or any board of education, or school district, shall be treated and considered the same as the property of other owners, and the property of any city, county, school district, or board of education within the district to be assessed shall be liable and assessed for its proper share of the cost of such improvements, in accordance with the provisions of this article".

Sec. 20 of the 1923 Act provides: "Any property which shall be owned by the city, town or county or any board of education or school district, shall be treated and considered the same as the property of other owners, and such city, town, county, school board or Board of Education within such district to be assessed, shall annually provide by the

they mature, there was no authority to make levies in any one year for installments maturing in any prior year. In other words, if the officials neglected to perform their plain statutory duty in any one year the non-feasance could not be cured by levies in subsequent years to pay the delinquent installments. It was noted that although the special assessments and each installment thereof are declared to be a lien against the lots and tracts of land in the district, co-equal with the lien of other taxes, and the property of the city, county or school district is to be considered the same as the property of other owners, yet the obligation to pay the assessments was not made a "true lien against public property because of the lack of a method of enforcement". "If", said the court "our previous holdings in their totality are correct, then it must be assumed that it was the legislative intention to render the collection of street improvement assessments against the property owned and used by the school district impracticable if not impossible * * *. We must decline to ascribe any such intention to the legislature".

Contrary to the philosophy of prior decisions, the Supreme Court was of the view that there was nothing in the Constitution which forbade the levy of taxes in one fiscal year to pay those obligations which were fixed by statute and not voluntarily assumed in a prior year. The court specifically overruled such cases and expressly adopted the rule followed in Smartt v. Board of Commissioners of Craig County, 67 Okl. 141, 169 P. 1101, L.R.A.1918C, 313. It also expressly overruled the philosophy of Independent School District v. Exchange National Co., 164 Okl. 176, 23 P.2d 210, 95 A.L.R. 685, to the effect that mandamus was the exclusive remedy afforded bondholders, and the long line of decisions which followed it,[3] and reinstated the rule in City of Drumright v. McCormick, supra. Thus, as we interpret the decision, the remedy of mandamus to compel a tax levy for the fiscal year 1940–1941 to pay special assessment installments delinquent since 1929, although not barred by laches or limitations, nor prohibited by constitutional limitations,

was nevertheless unavailable as of right. That instead, an action for money judgment, as in Smartt v. Board of Commissioners of Craig County supra, was maintainable and the case was reversed and remanded with directions "to take further proceedings in conformity with the views expressed herein". The court did not, however, pass upon the question whether the statute of limitations applied to the action for a personal judgment. Indeed, it could not have done so because no such action was before it. We cannot attribute to the court an intention to deny the application of the statute of limitations to a suit for a personal judgment simply because it held such action maintainable, or because it refused to apply the statute of limitations or laches to the mandamus action, which it said was not maintainable.

In Johnston v. Board of Education, 194 Okl. 150, 148 P.2d 195, 197, it was held that although under Section 29 of the 1923 Act (11 O.S.A. § 107) a bondholder could foreclose his assessment lien for the amount of the delinquent installments (a right not granted by the 1910 Act), no such proceeding could be maintained against public property, and that mandamus was the proper remedy to enforce levy of taxes for delinquent assessments, citing Independent School District v. Exchange National Co., supra. The mandamus action was commenced on August 7, 1942, to compel a levy for the fiscal year 1942 to pay the 1933 and 1934 installments for the payment of bonds maturing in August, 1934. Previously, and in 1939, a writ of mandamus had been granted compelling the Board of Education to make levies for the fiscal years 1939–'40, 1940–'41 and 1941–'42 to pay delinquent installments for 1932, 1933, and 1934. The Board complied with the writ for the fiscal year 1939–'40, but failed to comply for subsequent years. In these circumstances, the court was of the opinion that laches did not attach until the bonds matured in 1934. That, in any event, the question of laches was settled by the previous judgment of the trial court and since the suit was commenced not later than two years from the time the Board defaulted, the bondholders were not barred

---

levy of taxes in a sufficient sum to pay the maturing assessments and interest thereon".

. The courts have made no distinction in the interpretation of the two sections. Both have been construed as imposing a non-discretionary duty upon the taxing

officials to provide the levy for payment of the maturing installments.

[3] First National Bank in Wichita v. Board of Education, 174 Okl. 164, 49 P.2d 1077, and cases cited therein; City of Shawnee v. Exchange National Co., 185 Okl. 451, 94 P.2d 250.

by laches. The case was accordingly reversed and remanded, not however with directions to grant the writ of mandamus but with directions to seek a money judgment in consonance with the pronouncements in the Wilson case, supra. In arriving at this conclusion the court expressly distinguished the facts before it from those in Board of Education of City of Duncan v. Johnston, 189 Okl. 172, 115 P. 2d 132, pointing out that unlike the earlier case the bondholder in the case before it "was not guilty of undue delay in asserting his rights". We do not understand that because the Oklahoma Court took the view that mandamus was not barred by laches it was likewise of the view that the statute of limitations would not apply to an action for personal judgment, which it held to be the available remedy. To do so would attribute to the opinion a decision on a point neither presented nor discussed.

Our conception of the court's views in that respect is strengthened by the later case of City of Bristow v. Groom, 194 Okl. 384, 151 P.2d 936. That case was an action by street improvement bondholders to foreclose their special assessment liens under Section 29 of the 1923 Act, 11 O.S.A. § 107. A separate cause of action was stated against each owner of a lot or lots in the paving district. The suit was commenced on March 22, 1940, more than five years after the last installment of the assessment became delinquent and the bonds payable. The defendants, who were individual owners of the lots affected, pleaded the statute of limitations as a bar to the actions. Plaintiff contended that the suits were "special proceedings" to foreclose a lien which was "co-equal with the lien of other taxes" to continue until fully paid, and that the general statute of limitations was therefore not applicable. In holding that the statute applied to bar the actions, the court pointed to the comprehensive nature of the general statutes of limitations as applicable to all "civil actions", and observed that unless otherwise specifically provided or unless a legislative intent is clearly manifest, no exception could be claimed in favor of particular persons or cases. Finding no specific provision or legislative intent to except the actions from the application of the general statute of limitations, the court concluded that the proceedings authorized by Section 29 was not a "special proceedings" but a "civil action", subject to the general statute of limitations.

■ Although the Groom case did not involve the enforcement of a special assessment lien against public property, it does, we think, clearly indicate the disposition of the Oklahoma court to apply the statute of limitations to any civil action brought for the enforcement of a special assessment lien, whether the same is a suit to foreclose private property under Section 29 of the 1923 Act, or a suit for a personal judgment against the owner of public property, as authorized in Wilson v. City of Hollis, supra; Johnston v. Board of Education, supra; Board of Education v. City of Chickasha, ex rel. Poole, 195 Okl. 127, 155 P.2d 723. The only difference between a civil action to foreclose under Section 29 and an action for personal judgment, recognized by the Oklahoma court, is the manner of collecting the judgment. In either case the lien is co-equal with the lien of other taxes and continues until fully paid. There is no material difference in the form of the action. Generally, statutes of limitations run in behalf of school districts and municipal corporations, as if they were individuals. Limitations of Action, vol. 34, Am.Jur. 397, 398. Oklahoma follows this rule. Fabric Fire Hose Co. v. Town of Afton, 95 Okl. 298, 219 P. 680. We conclude, as did the trial court, that the general statute of limitations is applicable to this action, as well as the suits to foreclose in City of Bristow v. Groom, supra.

■ The trial court concluded that the asserted causes of action accrued and the statute of limitations commenced to run not later than twelve months after the last installment of the special assessment became delinquent. In so holding, it relied upon the ruling in City of Bristow v. Groom, supra, but that case involved foreclosure of delinquent installments under Section 29 of the 1923 Act, 11 O.S.A. § 107, which specifically provided inter alia that the right to foreclose the delinquent assessment lien accrued "at least" twelve months after the maturity of the last installment. But, no such provision controls our right of action, and we are therefore of the opinion that these causes of action accrued when on September 15, 1930, the bonds matured and the last installment became delinquent. The trial court also concluded that the three year statute was applicable, but was of the opinion that even if the five year statute applied the actions were nevertheless barred. Since the liability sought to be enforced is one "creat-

ed by statute other than forfeiture or penalty" the three year statute of limitations undoubtedly applies as in City of Bristow v. Groom, supra. Subdivision 2, 12 O.S.A. § 95.

The appellants take issue with this conclusion, contending that the causes of action for the personal judgment did not accrue so as to start the running of the statute of limitations until the actions were maintainable, and that they were not maintainable until made available as a remedy by the decision in Wilson v. City of Hollis, 193 Okl. 241, 142 P.2d 633, 150 A.L.R. 1385, finally decided on November 9, 1943.

█ It is the rule, as contended, that the statute of limitations does not start to run on a cause of action until the plaintiff "could have first maintained the action to a successful result". Skelly Oil Company v. Harrell, 192 Okl. 101, 134 P.2d 136; Harris v. Heron, 194 Okl. 226, 149 P.2d 94, and cases cited. But, as we have seen, when the bonds matured and the last installment became due on September 15, 1930, the appellants could have successfully maintained these asserted causes of action under the authority of City of Drumright v. McCormick, 118 Okl. 140, 247 P. 25, decided in June, 1926, and Clark v. City of Weatherford, 143 Okl. 165, 288 P. 278, decided in May, 1929. It follows that the three year statute of limitations commenced to run on that date, and operated to bar these actions on September 15, 1933, unless it was sooner interrupted or suspended by the decision in Independent School District v. Exchange National Co., 164 Okl. 176, 23 P.2d 210, 95 A.L.R. 685, decided June 6, 1933, which repudiated the decisions in City of Drumright v. McCormick, supra, and Clark v. City of Weatherford, supra, and expressly cut off the right to maintain this form of action.

█ "Statutes of limitations are now generally looked upon with favor as statutes of repose, and should be reasonably construed and applied", City of Bristow v. Groom, supra [194 Okl. 384, 151 P.2d 940], and unless the statute provides an exception the courts are not warranted in making one, although its application in the particular circumstances may be inequitable or work a hardship or inconvenience on the suitor. See 34 Am.Jur. 186. However, it is a well recognized exception that "whenever a person is prevented from exercising his legal remedy by some paramount authority, the time during which he is thus prevented is not to be counted against him in determining whether the statute of limitations has barred his right". Johnson v. Johnson, 182 Okl. 293, 77 P.2d 745. See also Amy v. Watertown, 130 U.S. 320, 9 S.Ct. 537, 32 L.Ed. 953; United States v. Wiley, 78 U.S. 508, 11 Wall. 508, 20 L.Ed. 211; Dillon v. Board of Pension Com'rs, 18 Cal.2d 427, 116 P.2d 37, 136 A.L.R. 800; Steele v. Bliss, 166 Mich. 593, 132 N.W. 345, 37 L.R.A.,N.S., 859, Ann.Cas.1912D, 1020; Bovay v. H. M. Byllesby & Co., Del.Ch., 29 A.2d 801; Knipple v. Lipke, 211 Minn. 238, 300 N.W. 620, 137 A.L.R. 783. It is said that the statutes of limitations "are enacted upon the presumption that one having a well founded claim will not delay enforcing it beyond a reasonable time, if he has the power to sue * * * but the basis of the presumption is gone whenever the ability to resort to the courts has been taken away". United States v. Wiley, supra [78 U.S. 513, 11 Wall. 513, 20 L.Ed. 211].

Recognizing and making application of the exception, the Oklahoma courts have held that the continuity of adverse possession of one seeking to establish title by prescription was interrupted to preclude the establishment of the title during the time in which the possession was under authority of the court order pending an unsuccessful appeal. Johnson v. Johnson, 182 Okl. 293, 77 P.2d 745. And, the statute of limitations was suspended on a cause of action upon a note payable to a Building and Loan Association during liquidation of the Association under supervision of the Bank Commissioner, on the theory that the assets of the corporation were "in custodia legis". McGee v. Kirby, 189 Okl. 488, 118 P.2d 199. But, it has also held that the appointment of a receiver in a suit on a debt, will not operate to suspend the running of the statute of limitations in favor of a judgment creditor who fails to have execution issued on his judgment within five years from the rendition thereof. Skinner v. First Nat. Bank of Davis, 135 Okl. 61, 273 P. 893.

█ We do not understand that a person is prevented from exercising his legal remedy merely because relevant decisions have obscured or rendered doubtful whether the action might be successfully maintained. In our case the appellants were not restrained by any superior power from instituting the suit—the courts were open. It is true that before the bar fell

the Supreme Court denied the asserted right of another suitor to maintain an action of this kind on the grounds that it was not available, but that decision did not operate to prevent the institution of these suits. We know of no case holding that an adverse rule of decision operates as a "superior power" to prevent the successful maintenance of a suit; the trend is the other way. See 34 Am.Jur. § 188, p. 152. The only sure way to determine whether a suit can be maintained to a successful result is to try it. The application of the statute of limitations cannot be made to depend upon the constantly shifting state of the law, and a suitor cannot toll or suspend the running of the statutes by relying upon the uncertainties of controlling law. It is incumbent upon him to test his right and remedy in the available forums. These suits were not commenced until through the labor of others the way was made clear.

We conclude that the statute of limitations is an effective bar to the maintenance of the suits, and the judgments of the trial court are affirmed.