RURAL MEDICAL EDUCATION LOAN AND SCHOLARSHIP PROGRAM 1. The end of the "course of study" of the recipient, and the time at which he must begin to repay his scholarship, is that time at which the recipient receives a license to practice medicine in this state. The same is true whether the recipient repays the scholarship by practice in a rural community or in cash. 2. Any one period of internship or service in the Armed Forces postpones the accrual of interest on a grant the recipient has elected to repay in cash. The Board of Trustees may by rule and regulation prescribe upon what contingencies the commencement of rural practice may be postponed. The contracts with respective recipients should specify that rural practice shall begin upon completion of the course of study as defined herein, but the contracts should not be drawn in a manner that would preclude their amendment or modification should contingencies within the guidelines established by Board rules -arise and postponement of rural practice become necessary. 3. The Board shall by rule and regulation determine the time in which payments must begin and be completed if the recipient elects to repay a scholarship in cash. The contracts with the respective recipients should so specify, and notes evidencing the obligations should be executed. Simple interest on those obligations will accrue at a rate of ten percent (10%) per annum. The Attorney General has considered your recent letter in which you refer to O.S.L. 1970, ch. 82 (70 O.S. 625.1 [70-625.1] — 70 O.S. 625.8 [70-625.8]), and inquire as follows: "1. When does his 'course of study' end, and the time for repayment, by either rural practice or by the payment of principal and interest, begin, for the recipient of an Oklahoma Rural Medical Education Loan and Scholarship? . . . "2. Does the period of internship, and of military service, postpone the time when rural practice by the recipient is required to begin, or only the accrual of interest? "3. If a recipient chooses not to practice in a rural area upon completion of his medical training, or of his required or voluntary military service, within what length of time must he begin to pay the accrued interest, and the maturing interest and principal of his loan? Does such interest compound, or remain at simple interest? What length of time is the deadline for paying the entire loan (including accrued interest, maturing interest, and principal)?" O.S.L. 1970, ch. 82, creating the Oklahoma Rural Medical Education Loan and Scholarship Fund, states in pertinent part as follows: "Section 1. There is hereby established the Oklahoma Rural Medical Education Loan and Scholarship Fund. . . . " "Section 2. The Board shall be authorized and empowered to grant scholarships to qualified students who are bona fide residents of the State of Oklahoma and who would not otherwise have funds necessary to finance the cost of a program of study leading to the Degree of Doctor of Medicine, to be granted by the University of Oklahoma School of Medicine. "Section 3. The terms and conditions governing the scholarships shall be as prescribed and formulated by the Board of Trustees of the Oklahoma Rural Medical Education Loan and Scholarship Fund, but shall include the condition that each recipient, upon completion of his course of study, shall repay his scholarship by practicing his profession in a rural community in Oklahoma having a population of five thousand (5,000) persons or less according to the last preceding United States decennial census and having a need therefor, as determined by the Board, for one (1) year for each two (2) years the scholarship is financed; provided, however, the recipient will be given no credit for payment and reduction of said obligation by serving in the defined rural communities for a period less than two (2) years or when approved by the Board repayment may be made in cash with interest at the rate of ten percent (10%) per annum, said interest to accrue from the date each payment of funds pursuant to the scholarship is made. No interest however shall accrue during any one period of time that the recipient thereof is required to serve in the Armed Forces of the United States including any one period of voluntary enlistment or during any period of internship. "Section 4. The Board shall promulgate and adopt such rules and regulations as may be necessary to carry out the provisions of this act. The Board shall . . . contract, increase, decrease, terminate and otherwise regulate all grants of scholarships and their repayment in cash or services. . . . "Section 5. . . . "Section 6. Each applicant, before being granted a scholarship, shall enter into a contract with the Board agreeing to the terms and conditions upon which the scholarship shall be granted to him. Said contract will include such terms and provisions as will carry out the full purpose and intent of this act and the form thereof shall be prepared and approved by the Attorney General. . . ." In City of Bristow ex rel. Hedges v. Groom,194 Okl. 384, 151 P.2d 936 (1944), the court stated in the body of its opinion: "The cardinal rule of statutory construction is to ascertain the intention of the Legislature, and this should ordinarily be done by a consideration of the language of the statute." With respect to your first question, 59 O.S. 493 [59-493] (1969), provides that an applicant for licensure to practice medicine in this state must submit to the Board of Medical Examiners evidence that he is a graduate of the legally chartered medical college or university. Section 493 provides further that the Board of Medical Examiners may at such time as it deems expedient require of all applicants for licensure a properly verified certificate that they have served one year's internship in a general hospital which is approved and recognized by the Board. We are informed by the Board of Medical Examiners and by the University of Oklahoma School of Medicine that applicants for licensure usually take the medical examinations conducted by the Board after completing four years of study at the medical school and receiving a diploma. The license to practice medicine, however, is not granted until the certificate of internship is presented to the Board of Medical Examiners. It is a misdemeanor to practice the profession of medicine without the license granted by that Board. 59 O.S. 491 [59-491] (1961). The legislature provided in section three of the Oklahoma rural medical education loan and scholarship fund act that the recipient of a scholarship "shall repay his scholarship by practicing his profession in a rural community." Emphasis added It follows from the above that the recipient can repay the scholarship by rural practice only after he receives his license to practice medicine. We find nothing in the Oklahoma rural medical education loan and scholarship fund act to indicate that a different rule would apply to those recipients who elect to repay the scholarship in cash. In answer to your first question, then, it is the opinion of the Attorney General that the end of the "course of study" of the recipient, and the time at which he must begin to repay his scholarship, is that time at which the recipient receives a license to practice medicine in this state. The same is true whether the recipient repays the scholarship by practice in a rural community or in cash. With respect to your second question, section three of the Oklahoma rural medical education loan and scholarship fund act provides that no interest shall accrue during any one period of internship or service in the Armed Forces, but does not address itself to the question whether military service postpones the time when rural practice by the recipient of a scholarship is required to begin. (We have already said in answer to your first question that internship, being a part of the course of study, by definition postpones the time when rural practice must begin).Section three does say that rural practice shall begin upon completion of the course of study, but obviously the legislature did not intend that any medical student who might face military service after receiving a license to practice medicine would be eligible for aid under the act only if he agreed to repay the scholarship in cash. It is therefore the opinion of the Attorney General that your second question be answered as follows. Any one period of internship or service in the Armed Forces postpones the accrual of interest on a grant the recipient has elected to repay in cash. The Board of Trustees may by rule and regulation prescribe upon what contingencies the commencement of rural practice may be postponed. The contracts with respective recipients should specify that rural practice shall begin upon completion of the course of study as defined herein, but the contracts should not be drawn in a manner that would preclude their amendment or modification should contingencies within the guidelines established by Board rules arise and postponement of rural practice become necessary. With respect to your third question, section three of the Oklahoma rural medical education loan and scholarship fund act provides that the recipient of a scholarship may, with the approval of the Board of Trustees, repay the scholarship in cash, with interest at ten percent (10%) per annum, which interest accrues from the date each payment of funds pursuant to the scholarship is made. This section is silent with respect to the time within which payments must begin and be completed if the recipient elects to repay in cash. Interest is generally to be computed to avoid the payment of compound interest and to secure a calculation of interest on the actual amount due and for the actual period during which interest should run. 47 C.J.S. Interest, 63. In Landess v. State of Oklahoma ex rel. Commissioners of the Land Office, Okl.335 P.2d 1077 (1959), it was said as follows: "Under the general rule, partial payments, in the absence of agreement to the contrary, are first applied to discharge interest due; any surplus goes to discharge the principal, the interest being computed thereafter on the balance; and any interest remaining unpaid is not added to the principal for purposes of computing interest." (Emphasis added) The phrase "ten percent (10%) per annum" therefore means simple interest computed at ten percent per year. Since section three of the act in question is silent with respect to the time within which payments must begin and be completed if the recipient elects to repay in cash, the authority to determine those time limits devolves upon the Board of Trustees by virtue of section four of the act, which requires the Board to promulgate such rules and regulations as are necessary to carry out the provisions of the act. If the recipient has originally agreed to practice in a rural community, but later, with the approval of the Board, chooses to repay in cash, a new contract should be entered into specifying the terms of repayment in accordance with the rules promulgated by the Board, and an appropriate note should be executed evidencing the debt. In answer to your third question, then, it is the opinion of the Attorney General that the Board shall by rule and regulation determine the time in which payments must begin and be completed if the recipient elects to repay a scholarship in cash. The contracts with the respective recipients should so specify, and notes evidencing the obligation of the recipients should be executed. Simple interest on those obligations will accrue at a rate of ten percent (10%) per annum. (W. J. Monroe)