BEACON REALTY INVESTMENTS COMPANY, Industrial Fabrication Company, Joel M. Rich, Vivian L. Nemec, Gary W. Henry, James F. O'Haren, Shome Motor Lodges, Inc., Georgia Pacific Corporation, Clint V. Cox, and Vansu Company, Appellants,

v.

John CANTRELL, in his official capacity as County Treasurer of Tulsa County, Oklahoma; Cheryl Clay, in her official capacity as County Assessor of Tulsa County, Oklahoma; Mel Rice, in his official capacity as Chairman of the Board of Tax Roll Corrections of Tulsa County, Oklahoma; and Independent School District No. One of Tulsa County, Oklahoma, Appellees.

No. 59790.

Supreme Court of Oklahoma.

March 21, 1989.

Barrow, Gaddis, Griffith & Grimm by William E. Farrior, Tulsa, for appellants.

David A. Carpenter, Cary Clark and Doris Fransein, Asst. Dist. Attys., Tulsa, for appellees John Cantrell, Cheryl Clay and Mel Rice.

Rosenstein, Fist & Ringold by David L. Fist, James W. Tilly, J. Douglas Mann and Jerry A. Richardson, Tulsa, for appellee Ind. School Dist. No. One of Tulsa County, Oklahoma.

PER CURIAM.

May a county assessor lawfully increase the fair cash value of a taxpayer's property for ad valorem tax purposes without notice if at the same time the assessment percentage is reduced to a figure that leaves assessed valuation the same as for the previous year? We answer in the negative.

I.

Beacon Realty Investments Company and several other businesses and individuals brought this action against the Tulsa County Treasurer and other county officials to obtain a refund of a portion of ad valorem taxes paid for the 1981–82 fiscal year.[1]

The foundation of their claim is that on January 1, 1981, the county assessor arbitrarily increased the fair cash value of their various properties by 66⅔ percent and decreased the assessment ratio from 25 to 15

percent. No notice whatsoever of this re-evaluation was given plaintiffs and they did not know of it until they received tax statements toward the end of the year. By then it was too late to seek relief from the Tulsa County Board of Equalization.

Plaintiffs did, however, complain to the Board of Tax Roll Corrections of Tulsa County in December 1981. That board heard the matter and on January 26 denied plaintiffs' relief on the ground it lacked statutory authority to grant redress because the "assessed valuation" had not been increased.

Plaintiffs allege the 1981 valuation increase is void for lack of notice and that their properties should be assessed at 15 percent of the lesser 1980 fair cash value fixed by the assessor.

Defendants filed general denials in April 1982. On June 3, Independent School District Number One of Tulsa County, Oklahoma, moved for permission to intervene as a party defendant under the authority of 12 O.S.1981 § 237, on the ground that since it is substantially financed by ad valorem taxes assessed against the real and personal property located in the Tulsa School District, it has a financial interest in the action.[2] More specifically, the school district, a public corporation, alleges it has an interest in money sought as a refund by plaintiffs because of its entitlement to a large share of it.

Over the lengthy objection of plaintiffs, the trial court granted the school district permission to intervene. In its answer the school district pleaded: (1) that this suit was barred because plaintiffs had not first sought relief from the Tulsa County Board of Equalization; (2) plaintiffs are not entitled to relief because the increase in property valuation did not increase the assessment for 1981–1982 over that of 1980–1981 obviating the need for notice of the increased value; and (3) that the board of tax roll corrections had no legal authority to grant plaintiffs any relief.

1. There are some 10 plaintiffs listing 23 properties and seeking refunds totalling $59,426.05.

2. 12 O.S.1981 § 237, reads:

When in an action for the recovery of real or personal property any person having an interest in the property applies to be made a party, the court may order it to be done.

There followed a period of discovery which established as facts plaintiffs' essential allegations. The defendant assessor admitted that on January 1, 1981, the fair cash value for ad valorem tax purposes of each of plaintiffs' property was increased by exactly 66⅔ percent and the assessment ratio or percentage was decreased from 25 to 15 percent. She further admitted that the fair cash value change was made without any notice to plaintiffs. It is also conceded that a 15 percent assessment ratio was properly used by the assessor in arriving at the 1981–1982 assessment value.

On October 27, 1982, plaintiffs moved for summary judgment on the ground the pleadings disclosed no controversy as to any material fact and that under the facts and law they were entitled to the relief they sought.

A couple of months later, the school district likewise moved for a summary judgment. It agreed no material fact controversy existed, but argued that the law required defendants be granted judgment rather than plaintiffs.

On January 26, 1983, the trial court found the facts to be undisputed and granted defendants a summary judgment.

In defense of the judgment defendants present four propositions: (1) notice of increase in fair cash value of a property is not required unless tax assessment is increased over that of the previous year; (2) plaintiffs' admission that fair cash value placed upon their properties in January 1981 was accurate prevents them from obtaining a refund; (3) plaintiffs failed to pay the alleged illegal tax under protest—a condition precedent for obtaining a refund; and (4) in any event, if property owners were entitled to notice of the value increase, then the court should render only a prospective ruling under the circumstances.

## II.

■ Plaintiffs' first and principal contention is that the arbitrary fair cash valuation increase without notice was and is invalid. We agree.

In fulfilling her duty to value taxable property, the assessor is statutorily obligated to "do all things necessary, including the viewing and inspecting of property." 68 O.S.1981 § 2435(b). And, in the case of real estate, if she increases "the valuation over the assessment for the preceding year, the county assessor shall notify in writing the person in whose name any such property is listed, giving the amount of such valuation as increased." 68 O.S.1981 § 2460. This statute then gives the taxpayer 20 days from the date of the mailing of such notice in which to file a complaint with the county equalization board contesting the value increase.

Defendants' response to this is that § 2460 does not require notice if there is no increase in the assessed valuation. They reason that the language of § 2460, specifying that where assessors "increase the valuation over the assessment for the preceding year" must be read as though it says that assessors may increase or decrease the valuation of properties without notice if it does not result in an assessed value exceeding that of the previous year. This conclusion is reached by assuming that the term "assessment" means assessed value—the value used to determine the taxpayer's ad valorem tax liability.

■ We cannot accept this view. While there seems to be some confusion over the meaning of the term "assessment," it ordinarily means, with regard to real estate, the process or ultimate result of imposing a special tax or fine proportionately against property in a given area. *See* Black's Law Dictionary 50 (4th ed. 1968). On the other hand, in the early case of *Gray v. Stiles,* 6 Okl. 455, 49 P. 1083 (1897), in trying to figure out the term's meaning in a territorial taxation statute, the court said: "We conclude that assessment is the same as valuation of the property taxed; that this assessment or valuation must be made by the officer or officers to whom it is by the statute expressly committed...." Later, however, in *City of Bristow v. Groom,* 194 Okl. 384, 151 P.2d 936 (1944), the court, in reviewing a street improvement assessment lien foreclosure suit judgment, con-

strued the word "assessment" to mean "the total of the cost apportioned against a particular property"—a definition more in line with the Black's Law Dictionary concept.

Of these two definitions only the use of the one in *Gray* injects sense into the § 2460 clause in question by permitting it to read "increase the valuation over the valuation for the preceding year." On the other hand, if we use the Black's Law Dictionary definition, the clause would be more like comparing apples with apple trees and not make much grammatical sense. It would read "increase the valuation over the [tax 'imposition' process] for the preceding year." Clearly, the words "valuation" and "assessment" must have been used as synonyms or else we are faced with a reference to a quantitative comparison of unlike entities. The latter, for example, is what we have if we accept defendants' theory that the legislature intended to say "increase the fair cash valuation over the assessed valuation for the preceding year." Suppose, for instance, a home was determined by the assessor in January 1980 to have a fair cash value of $100,000. The assessor applied an assessment percentage of 25 percent to reach an assessed valuation of $25,000. Under defendants' interpretation of § 2460 the assessor would have to give notice only if the $100,000 cash value was raised to any amount over $25,000, for instance, 66⅔ percent as defendants did in this case, to achieve a value of $166,666—a concept that does not make an awful lot of sense since the valuation figure will of necessity always be more than the assessed value to start. Not only that but if the assessor can raise the valuation and reduce the percentage without notice, all that would have to be done is wait a year and then raise the percentage and effectively gain a large and unchallengeable tax and tax base increase.

Finally, the reading of the first three sentences of § 2460 in their entirety demonstrates beyond peradventure that notice is required if either the county assessor or the board of equalization increases the fair cash value. Such notice shall advise the taxpayer of both the old and new fair cash value, the previous and current assessed valuation, and the previous and current assessment ratio. The first three sentences of § 2460 read:

In any case where the county assessor shall increase the valuation of any property above that returned by the taxpayer, or in the case of real estate, increase the valuation over the assessment for the preceding year, the county assessor shall *notify in writing* the person in whose name any such property is listed, *giving the amount of such valuation as increased.* In the case of real estate this notice, whether given by the county assessor or by the county board of equalization, *shall include the fair cash value of the property as used in determining the assessment for the preceding and current year; the assessed valuation for the preceding and current year; and the assessment ratio for the preceding and current year.* Such notice may be by mail or delivery to the last-known address of such person, or to the person in charge or possession of the property. (emphasis added)

The ultimate fact is that the assessment of an ad valorem tax against real property involves at least two or perhaps three distinct steps: (1) determination of the "fair cash value" of the taxable property (valuation); (2) application of an assessment percentage to such valuation (results in an assessed valuation); and (3) levying of a certain millage (one dollar of tax per thousand dollars of assessed valuation) against the property.[3] It is with reference to the first step that the legislature has required notice if change is made. And as was held in *Chapman v. Thompson*, 288 P.2d 720 (Okla.1955), notice of increased valuation of property by an assessor is mandatory and not directory.

### III.

Plaintiffs' second proposition—that the proper assessment percentage applicable to

**3.** See Okla. Const. art. 10, §§ 8, 9, *et seq.,* and *Cantrell v. Sanders,* 610 P.2d 227 (Okla.1980).

*Cantrell* omits reference to the third step.

their property is 15 percent—is conceded by defendants to be correct, and thus needs no further comment.

## IV.

■ Defendants' second contention in defense of the summary judgment—that plaintiffs admit that the increased valuation is "accurate" which prevents them from getting refunds—is without merit. What the fair cash values of the properties involved were on January 1, 1981, was not an issue raised by the pleadings. Indeed, it would not have been an appropriate one for defendants to inject had they tried. This is the first thing.

The second thing is that we fail to find where plaintiffs stated that the cash value placed on their property January 1, 1981, was "accurate" or correct or even reasonable. The record citation defendants give for their assertion to the contrary is plaintiffs' answer to Interrogatory No. 8. We presume the reference is to the first of the two sets of interrogatories served by defendants on plaintiffs.

Defendants' Interrogatory No. 7 asked the plaintiffs to "state the fair cash value (as of January 1, 1981) of each tract of land" involved.

Plaintiff answered by "object[ing] to this Interrogatory as it calls for information from Plaintiff which is irrelevant to the determination of the legal issue in this action. Defendant Cheryl L. Clay has determined the fair cash value of Plaintiff's property for ad valorem tax purposes" on January 1, 1981, to be 66⅔ percent more than what it was the year before.

Interrogatory No. 8 asked plaintiffs to state the facts they relied on to establish the January 1, 1981, fair cash value stated in Interrogatory No. 7 and to produce documents and names of witnesses they relied on to establish such value.

Plaintiffs adopted the answer to Interrogatory No. 7.

Defendants asked the trial court to overrule plaintiffs' objections. The court did, and plaintiffs answered No. 7 thus: "See Defendant's Answers to [plaintiffs'] Inter-

rogatories No. 3, 4 and 5." The answer to No. 8 was this: "Plaintiff relies on the Tulsa County Assessor's determination of the fair cash value of Plaintiff's property for ad valorem tax purposes. See Defendant's Answers to Interrogatories No. 3, 4 and 5." Such answer does not appear to us to vouch for the accuracy of the fair cash value but is merely a verification of what the assessor found it to be.

The defendants' answers that plaintiffs refer to were in response to questions as follows: Plaintiffs' Interrogatory No. 3 asked defendants to state the fair cash value for ad valorem tax purposes for 1980.

Defendants' Answer: "See attachment." There is no attachment.

Plaintiffs' Interrogatory No. 4 asked for the same information for 1981.

Defendants' Answer: "See attachment." But again there is no attachment.

Plaintiffs' Interrogatory No. 5 asked defendants how "the fair cash value of each of the Plaintiffs' properties [was] determined for ad valorem tax purposes" of subject properties for 1981.

Answer: "Defendant objects to the Interrogatory as being irrelevant and immaterial to the issue raised before this Court." And indeed it was.

After being ordered by the court to answer Interrogatory No. 5, defendants stated that they used "information obtained from past on-site physical examinations and other data," etc. In giving this answer the county assessor swears she actually went through the appropriate procedures to reappraise the properties in question as well as, according to defendants, "perhaps thousands of other tracts" in Tulsa County —and reached the conclusion that the fair market value of each was exactly 66⅔ more than what it was a year earlier. And this was during a year of recessionary leveling off, if not a decline, of real estate values.

Thus, it does not appear that plaintiffs conceded that the increased fair cash value set by the assessor was an accurate appraisal.

## V.

▉ Defendants next argue that plaintiffs' failure to pay the alleged excess tax under protest prevents its recovery. Defendants rely on the early case of *Hays v. Bonaparte*, 129 Okl. 258, 264 P. 605 (1928), and the recent case of *Oklahoma Nitrogen v. Lucas*, 655 P.2d 1031 (Okla.1982). *Hays* construes a statute (now 68 O.S.1981 § 2469) no longer applicable because of a later controlling statute—68 O.S.1981 § 2479. And *Oklahoma Nitrogen* is, as we will demonstrate shortly, factually inapposite.

The facts here bring plaintiffs within the purview of 68 O.S.1981 § 2479(9). It is a fairly long statute which creates a board of tax roll corrections and provides for taxpayer relief from incorrect taxation after the tax rolls have been delivered to the county treasurer by such board. The statute does not require a protest to be filed as a condition precedent to obtaining relief but does tend to limit the right to redress under the act to some 17 items of errors. The relevant part of the statute here reads as follows:

> If, upon such hearing; [before the board of correction] it appears that:
>
> . . . .
>
> (9) Any valuation ... returned for assessment ... in the event of increase by either the county assessor or the county board of equalization and no notice thereof was sent (offer of proof of failure to receive notice may not be heard)....
>
> . . . .
>
> (17) ... [T]hen ... it shall be the duty of the board of tax roll corrections to ... correct such error [and enter an appropriate order of correction.]

Thus it is clear that plaintiffs' claim is covered by the provisions of § 2479, and this is what distinguishes it from the contention made in *Oklahoma Nitrogen Co.* In the latter case the taxpayer complained that an inappropriate assessment ratio had been applied to the property. The court held that the taxpayer had to comply with the provisions of § 2469 inasmuch as his claim was not founded on facts "provided for under § 2479 simply because it does not fall within any of the seventeen enumerated instances, and therefore relief cannot be granted therein."

Parenthetically, there are two other critical deficiencies in defendants' protest defense. First, they did not plead it and, so far as we can tell from the record, did not otherwise raise the question.[4]

Second, something can be said for the conclusion that plaintiffs substantially complied with the protest requirements of § 2469 in that all it requires is that the aggrieved taxpayer "pay the full amount of the taxes at the time and in the manner provided by law, and ... give notice to the officer collecting the taxes showing the grounds of complaint and that suit will be brought against the officer for recovery of them." Here plaintiffs filed a complaint with the board of tax roll corrections in December 1981 before any tax payment was due and another one in January after the taxes were due. The complaint was that the valuation was changed without notice. The tax collector did not deny being aware that such actions were filed. The record does not disclose when the subject taxes were paid but we do know that this lawsuit was filed February 26, 1982, and the tax collector was given written notice of it a few days later.

## VI.

Finally, defendants request that "[i]n the event the court determines that the property owners were entitled to notice ... the effect of its ruling [should be] prospective only." The reason for this request, they say, is that the "uncontroverted evidence in this case suggests that the Tulsa County Assessor increased the fair cash value of hundreds, perhaps thousands, of other tracts of real property located in Tulsa County without giving notice" and should the court determine that notice was re-

---

4. One may infer from an argument made in plaintiffs' trial court brief responding to defendant-intervenor's motion for summary judg-ment that the applicability of § 2479 had been discussed, but we find no mention of the relevance or requirements of § 2469.

**608**

quired, "the ruling will precipitate a virtual flood of litigation by the taxpayers seeking tax refunds." In support of this request defendants note that this is what was done in *Cantrell v. Sanders*, 610 P.2d 227 (Okla. 1980).

■ In *Cantrell*, a multiple assessment ratio was held to be unconstitutional. Making its decision prospective only, this Court held:

> The refund judgment shall stand but that part of the trial court's decision which directs that "equal assessment percentage rate" be used "for the year 1980 and for all subsequent years" is modified by making that command apply with effect to the year 1981 and thereafter.

*Id.* at 232. We similarly hold the effect of the decision in this case shall be applied prospectively beginning with the 1982–83 fiscal year with the exception of application to the plaintiffs herein who should be allowed to reap the benefits of their efforts which resulted in correcting a wrong.

## VII.

The summary judgment in favor of defendants is vacated and the cause is remanded with directions to enter judgment for plaintiffs for the amount of refund due them after figuring the 1981–82 ad valorem tax on the basis of 15 percent of the 1980–81 fair cash value.

OPALA, V.C.J., and HODGES, SIMMS, DOOLIN, ALMA WILSON and SUMMERS, JJ., concur.

KAUGER, J., concurs in part and dissents in part.

HARGRAVE, C.J., and LAVENDER, J., dissent.

